PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/15/99
THOMAS  K. KAHN
CLERK

_____

No. 99-8160
_____

D. C. Docket No. 97-00144-CV-2


DAVID B. FALKEN, ANGIE J. MYERS, et al.,

Plaintiffs-Appellees,

versus

GLYNN COUNTY, GEORGIA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia

_____
**(December 15, 1999)**


Before BLACK and WILSON, Circuit Judges, and HILL, Senior Circuit Judge.

BLACK, Circuit Judge:

Appellant Glynn County, Georgia, (the County) appeals the district court's judgment that the County violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, by not paying overtime compensation to certain employees of its fire department. The sixteen Appellees are certified as emergency medical services (EMS) responders and often are assigned to EMS units. In addition, however, the employees are certified firefighters and can be assigned to shifts on the fire trucks; they can and do perform firefighting functions after arriving to calls which do not require EMS duties. The County argued the nature of this employment position in the fire department entitled it to apply the partial overtime exemption under § 207(k) of the FLSA for employees engaged in "fire protection activities" even though a majority of the calls to which the employees responded were related to medical services rather than fires. The district court disagreed and awarded damages for unpaid overtime to the employees. We affirm in part and vacate and remand in part.

## I. BACKGROUND

The sixteen plaintiffs (the EMS employees) are current and former employees of the Glynn County, Georgia, fire department. They are certified firefighters. They also are trained to perform EMS duties, and hence their employment assignment was to the EMS division rather than the fire division of the department. The divisions are highly integrated, however; there are

2

overlapping systems of pay, promotions, and pensions. There is not a clean administrative separation between the department's EMS employees and its employees who are only firefighters.

When the occasion demands, the EMS employees may work shifts on the fire trucks simply as firefighters. To this end, they receive regular training in firefighting in addition to their regular medical training. The EMS employees are rotated through the EMS and fire engine units as needed to fill the personnel requirements for shifts of both types.

In addition, the job functions of the EMS employees assigned to the EMS units frequently overlap with the operations of the firefighters assigned to the fire trucks. The EMS units respond to every medical emergency call, many of which may not involve the dispatch of fire units. EMS units also are dispatched to every structural fire. At those fires, the EMS employees perform rescue operations, deliver any medical care needed, and join in fighting the fire if their other duties are completed or unnecessary. Similarly, EMS units may be sent to vehicle fires, brush fires, and other miscellaneous fires, although they usually are not sent in such cases. When sent, the EMS employees also have responsibility for, and do engage in, fighting these fires if no medical assistance is required. Finally, EMS

3

units are dispatched to some but not all automobile accidents, other accidents, crime scenes, or public assistance calls if there are injuries.

The parties' Stipulated Facts and incorporated exhibits also address the number and types of calls to which EMS units responded during the period involved in the lawsuit. The district court found that about 64% of EMS unit calls related solely to medical emergencies. These calls accounted for about 71% of the time the EMS employees spent out of the station responding to calls. The amount of time spent out of the station on calls, however, was only a small fraction of the total work hours of the EMS employees. Time spent responding to calls of all types, including medical calls, fires, car accidents, and so on, amounted to just over 5% of total work hours. Medical calls constituted slightly less than 4% of total work hours. Accordingly, the EMS employees spent almost 95% of their time waiting to be dispatched on emergency calls.

While waiting for emergency calls to come in, the EMS employees performed a number of tasks related to their firefighting or EMS duties. The EMS employees did maintenance work on the EMS vehicles and equipment. When they completed these tasks, they assisted the employees assigned to the fire engines with cleaning and maintenance of the fire station, fire engines, and firefighting equipment. In addition, the EMS employees participated in waiting time activities

4

such as checking fire hydrants, making pre-fire plans, and instructing the public in fire safety education programs.

The County believed that the foregoing facts brought the EMS employees within the overtime exemption in § 207(k) of the FLSA for employees engaged in "fire protection activities." The EMS employees disagreed and sued the County for violating the FLSA by not paying them under the ordinary overtime standard. The district court held that the County had failed to meet its burden of proving that the fire protection activities exemption applied, and awarded damages for unpaid overtime to the EMS employees.

## II. DISCUSSION

On appeal, the County argues the district court incorrectly interpreted the FLSA, the Department of Labor's (DOL's) implementing regulations, and the case law in its judgment for the EMS employees. We review the district court's findings of fact for clear error and its legal conclusions de novo. *See Collier v. Turpin*, 177 F.3d 1184, 1193 (11th Cir. 1999).

A. <u>The FLSA and the DOL's Implementing Regulations</u>.

The FLSA establishes a general presumption that entitles all workers to time-and-a-half overtime pay for hours worked in excess of 40 per week. *See* 29 U.S.C. § 207(a). The FLSA creates a number of exemptions, however, for certain

5

types of workers for whom different numbers of hours apply before overtime must be paid. One of these is a partial exemption for a "public agency . . . with respect to the employment of any employee in fire protection activities." *Id.* § 207(k). Fire protection employees are due overtime only for hours in excess of 212 worked in a 28-day period, equivalent to an average of 53 hours per week. *See* 29 C.F.R. § 553.201(a). The FLSA does not define "fire protection activities."[1]

There is no statutory exemption for employees whose sole function is performing EMS duties. Therefore, EMS workers are owed overtime under the ordinary 40 hours standard unless their employer can prove that the EMS workers should be treated as falling within the exemption for employees engaged in "fire protection activities." *See O'Neal v. Barrow County Bd. of Comm'rs*, 980 F.2d 674, 677 (11th Cir. 1993) (holding that employer bears burden of proof on applying fire protection activities exemption to EMS workers).

---

[1] The § 207(k) exemption also reaches "any employee in law enforcement activities;" such employees must be paid overtime for hours in excess of 171 in 28 days (about 43 hours per week). *See* 29 C.F.R. § 553.201(a). The parties in this case apparently have relied almost exclusively upon the fire protection activities portion of the § 207(k) exemption. To the extent the EMS employees perform medical functions related to law enforcement—for example, accompanying police officers to crime scenes with reports of injuries—those hours also are exempt activity. *See* 29 C.F.R. § 553.215; *O'Neal v. Barrow County Bd. of Comm'rs*, 980 F.2d 674, 681 (11th Cir. 1993) (noting that emergency medical calls relating to police activity, such as stabbings, fights, or domestic violence, fall within the exemption). In following the parties by referring throughout this opinion to the fire protection activities exemption, we do not suggest that the County cannot also apply the law enforcement activities exemption, where appropriate, to some of the EMS employees' work time.

Although the FLSA does not define fire protection activities or the manner in which EMS workers may be brought within the § 207(k) exemption, the DOL's implementing regulations provide this analysis.  *See* 29 C.F.R. §§ 553.201-553.215.  As with all agency rules, the DOL's regulations implementing the FLSA are accorded *Chevron* deference.  *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82 (1984) (holding that courts must defer to executive branch regulations implementing statutes so long as agency's regulation is "based on a permissible construction of the statute").

First, the regulations fill in the gap in the FLSA by providing a four-part test to define fire protection activities.  For simplicity, we will call an employee meeting this test a "firefighter."  A firefighter is an employee:

> (1) who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by State statute or local ordinance; (3) who has the legal authority and responsibility to engage in the prevention, control or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards.

29 C.F.R. § 553.210(a).  Thus, employees who perform only EMS functions—that is, who have training and responsibilities for medical but not firefighting

7

duties—will not meet this test and cannot be brought within the § 207(k)

exemption on the ground that they are firefighters.

Second, however, the regulations do not limit the fire protection activities

exemption only to firefighters. There are two provisions under which EMS

workers may be included within the fire protection activities exemption. In one,

EMS workers may be paid like firefighters "if such personnel form an *integral part*

of the public agency's fire protection activities. *See* § 553.215." 29 C.F.R. §

553.210(a) (emphasis added). In the other, regulation § 553.215 provides that:

> Ambulance and rescue service employees of a public agency *other
> than a fire protection . . . agency* may be treated as employees
> engaged in fire protection . . . activities . . . if their services are
> *substantially related* to firefighting . . . activities in that (1) the
> ambulance and rescue service employees have received training in the
> rescue of fire, crime, and accident victims or firefighters . . . injured in
> the performance of their . . . duties, and (2) the ambulance and rescue
> service employees are regularly dispatched to fires, crime scenes,
> riots, natural disasters and accidents.

29 C.F.R. § 553.215 (emphasis added). The regulations provide that employment

by the fire department alone is not sufficient to constitute employment in fire

protection activities to bring EMS workers under the § 207(k) exemption—fire

department employees performing only EMS functions must be an "integral part"

of firefighting to be covered. Similarly, EMS workers employed by an agency

separate from the fire department cannot be paid like firefighters unless the two-

part "substantially related" test is met. *See Wouters v. Martin County*, 9 F.3d 924, 929 (11th Cir. 1993) (noting this distinction). Thus, when the employees are not firefighters but EMS workers, the employer nevertheless may pay them under the fire protection activities exemption if the employer can prove one of the two provisions applies.

Third and finally, the regulations also include a provision under which employers may lose the exemption for employees who otherwise would be exempt. The so-called 80/20 rule states:

> Employees engaged in fire protection . . . activities . . . may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection . . . activities. For example, firefighters who work for forest conservation agencies may, during slack times, plant trees and perform other conservation activities unrelated to their firefighting duties. The performance of such nonexempt work will not defeat . . . [§ 207(k)] exemption[] unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period. A person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection . . . activities.

29 C.F.R. § 553.212(a). The regulations require that 80% of an employee's time must be spent either on fire protection activities themselves, or on activities related to or incidental to fire protection activities. *Cf.* 29 C.F.R. § 553.210(a)(4) (describing activities incidental to fire protection, such as housekeeping in the station, equipment maintenance, and inspections). To retain the exemption, the

employer has the burden of proving that the employee did not exceed the 20% limitation on nonexempt activity.  *See Wouters*, 9 F.3d at 932.

B.  The Case Law: Applying the Regulations to Employees with EMS Duties.

There are two categories of cases in which the DOL's regulations implementing the FLSA fire protection activities exemption have been applied to employees who perform EMS duties.  In the first, the employees are EMS workers only but the employer seeks to apply the fire protection activities exemption under either the § 553.210(a) integral part test or the § 533.215 substantially related test.  In the second, the employer invokes the fire protection activities exemption because the employees are fully cross-trained as dual-function firefighting and EMS personnel; that is, they are capable of acting, and in fact do act, as both firefighters and EMS workers in their employment.  This Court has decided cases only in the first category until this case, which falls into the second category.  We briefly discuss the first category, however, because the district court appears to have used it in reaching the decision in favor of the EMS employees.

1.  The First Category.

This Court's prior cases interpreting the DOL's regulations each involved employees who were solely EMS workers.  That is, the employees were not firefighters within the definition in § 553.210(a)(1)-(4).  The employers sought to

apply the fire protection activities exemption to the EMS-only workers under the other regulations. In *O'Neal v. Barrow County Board of Commissioners*, the EMS-only workers were employed by an agency separate from the fire department, so the substantially-related test of § 553.215 applied. *See O'Neal*, 980 F.2d at 676.[2] The same was true in *Spires v. Ben Hill County*, 980 F.2d 683 (11th Cir. 1993),[3] and in *Jones v. City of Columbus*, 120 F.3d 248 (11th Cir. 1997), *cert. denied*, 118 S. Ct. 1797 (1998).[4] In *Wouters v. Martin County*, the EMS-only workers were employed by the fire department, so the integral part test of § 553.210(a) applied. *See Wouters*, 9 F.3d at 926, 929.[5]

These cases developed several important principles for applying the DOL's regulations to facts involving EMS-only workers. First, when applying the 80/20 rule to EMS-only employees, medical functions and duties performed outside the

---

[2] The *O'Neal* court vacated and remanded the summary judgment for the county because the district court's findings of fact in its order were insufficient to dispose of all material facts in the case. *See* 980 F.2d at 676.

[3] In *Spires*, this Court affirmed the judgment for the EMS plaintiffs because the county had failed to prove its employees' activities satisfied the regularly dispatched prong of § 553.215. *See* 980 F.2d at 689.

[4] In *Jones*, the city relied exclusively on § 553.215 to justify application of the exemption to its EMS employees. *See* 120 F.3d at 252. This Court vacated and remanded the summary judgment in favor of the city because the district court had not permitted the plaintiffs an adequate opportunity for discovery before granting summary judgment. *See id*. at 253-54.

[5] As in *O'Neal*, the *Wouters* court vacated and remanded the district court's summary judgment because the findings of facts were insufficient to resolve all material issues of fact. *See* 9 F.3d at 930.

scope of firefighting dispatches by the fire department must be considered nonexempt activities that will defeat the fire protection activities exemption if they exceed 20% of the EMS-only employees' total work hours. *See O'Neal*, 980 F.2d at 681 (stating that "the work that the County has characterized as 'medical emergency hours' is nonexempt . . . because [it is] unrelated to fire protection or law enforcement."); *Spires*, 980 F.2d at 689; *Wouters*, 9 F.3d at 929-32; *Jones*, 120 F.3d at 252 (explaining that "this court has held that hours spent on medical emergency dispatches, patient transfers and accident scenes unrelated to automobiles are nonexempt"). Second, the court must evaluate the employer's data about the types of calls to which the EMS-only workers respond and determine whether the hours spent on nonexempt calls exceed 20% of the employees' total work hours. If the EMS-only employees spend more than 20% of their work hours in the performance of medical activities not related to firefighting—that is, emergency calls of a medical nature only, such as transferring victims of heart attacks or falls to the hospital—the fire protection activities exemption is lost. *See O'Neal*, 980 F.2d at 682; *Wouters*, 9 F.3d at 932.[6]

---

[6] *Cf. Christian v. City of Gladstone*, 108 F.3d 929, 933 (8th Cir.), *cert. denied*, 118 S. Ct. 557 (1997) (district court denied application of fire protection activities exemption where it found that nonexempt "[t]ime spent responding to, returning from, or completing paperwork on medical calls or accidents other than car accidents, and time devoted to emergency medical training or study related to emergency medical services" exceeded 20% of total work hours).

12

Third and finally, however, this Court has noted that most emergency workers, including both firefighters and EMS-only workers, spend only a small fraction of their total work hours out of the station responding to emergency calls, and accordingly spend a great proportion of their work time waiting at their posts for emergency calls to arrive. In *O'Neal*, this Court concluded that waiting time is exempt:

> The remainder of the hours spent by the EMTs awaiting calls, however, is related to fire protection or law enforcement in that the EMTs are awaiting fire and police calls just as they are awaiting medical emergency and accident calls. Thus, the station time . . . is exempt work, except to the extent the County may require the EMTs to perform tasks that are unrelated to fire protection or law enforcement.

980 F.2d at 682. Thus, *O'Neal* holds that waiting time spent simply waiting is exempt time because it is related to fire protection activities, even for EMS-only workers. Waiting time is not exempt, however, if the employees spend this time undertaking activities *not* related to fire protection. For example, just as employers of forest firefighters lose the exemption if the workers spend too much of their waiting time on nonexempt conservation activities, *see* 29 C.F.R. § 553.212(a), so also employers of EMS-only workers lose the exemption if the workers spend too much of their waiting time on activities related to nonexempt medical functions.

    2. <u>The Second Category</u>.

13

Not all fire departments employ EMS workers in the same manner that the employers did in the cases discussed above. Instead of EMS-only employees, some fire departments require that every employee be a trained firefighter, including those employees performing EMS duties. That is, these fire departments use dual-function EMS/firefighting employees.

The DOL has concluded that dual-function EMS/firefighters should be evaluated under a different interpretation of the fire protection activities exemption than EMS-only employees. The Wage & Hour Division stated the following in a 1995 opinion letter:

> We have concluded that firefighters who are cross-trained as EMS employees qualify for exemption under [§ 207(k)] as fire protection employees where they are principally engaged as firefighters meeting the four tests outlined in 29 C.F.R. § 553.210(a), as set forth above, and where the EMS functions they perform meet the tests described in 29 C.F.R. § 553.215 for ambulance and rescue employees. Under these circumstances, we would consider that ambulance and rescue activities are incidental to the employees' fire protection duties within the meaning of the fourth test in 29 C.F.R. § 553.210(a), including any ambulance and rescue activities related to medical emergencies, rather than fires, crime scenes, riots, natural disasters, and accidents.
>
> In these circumstances, the time engaged in ambulance and rescue activities would be considered to be work performed as in incident to or in conjunction with the employees' fire protection activities within the meaning of 29 C.F.R. § 553.212(a), and would not count in the 20 percent limitation on nonexempt work.

Wage & Hour Division, U.S. Department of Labor, Opinion Letter, Feb. 13, 1995.

14

Under this interpretation of the regulations, medical functions would be exempt activity when performed by dual-function EMS/firefighters as defined in the opinion letter, although the same activities are nonexempt under *O'Neal* when performed by EMS-only employees. First, the DOL letter requires that the employees satisfy the definition in § 553.210(a)(1)-(4); that is, the employees must be firefighters. Second, the letter requires that the performance of EMS duties meet the two-part substantially related test of § 553.215—that is, the employees are trained in rescue and EMS units are regularly dispatched to firefighting-related emergencies. This ensures that even the EMS functions are closely connected to core fire protection activities in practice. Third, the DOL concludes that where *both* of these tests are met, purely medical functions are *not* nonexempt under the 80/20 rule. For such dual-function EMS/firefighters, the DOL determines that medical functions are related to and incidental to both employee fire protection functions, firefighting and EMS duties. Another way of stating the same point is that the nature of the employment position of a dual-function EMS/firefighters is, in essence, employment in fire protection activities *per se*—because both aspects of the job each constitute employment in fire protection activities, job functions related to either (which includes purely medical functions) are exempt. Although this Court held in *O'Neal* that medical emergency calls and corollary activities are

15

nonexempt when performed by EMS-only employees because such duties are not related to fire protection activities, the DOL argues that medical activities and corollary activities are exempt when performed by dual-function EMS/firefighters because the activities are related to fire protection activities for that kind of employee.

We must defer to the DOL's interpretation of its FLSA regulations unless the interpretation is "plainly erroneous or inconsistent with the regulation." *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 911 (1997). The DOL's application of the fire protection activities exemption to dual-function EMS/firefighters is a permissible interpretation of the regulations and the FLSA. We therefore hold that the standard set forth in the DOL's opinion letter cited above governs the application of the fire protection activities exemption to dual-function EMS/firefighters. In particular, the holding of *O'Neal*, that medical activities are nonexempt for purposes of the 80/20 rule, is not applicable to such employees.

The Eighth Circuit reached the same result in a comparable case. *See Christian v. City of Gladstone*, 108 F.3d 929 (8th Cir.), *cert. denied*, 118 S. Ct. 557 (1997). The court wrote that:

> Here, the stipulated facts show that the paramedics respond to fires, fight them, and provide paramedic services at those fires, as well as on

16

> calls not involving fires. Nearly all of their time is spent on such activities, related training, support services, and waiting for calls, and they do not spend much time on activities unrelated to their firefighting or emergency medical service activities. Providing paramedic services on accident and medical emergency calls not stemming from a fire or car accident does not alter the nature of their duties or cause them to perform tasks unrelated to their job. The district court thus erred by considering time spent on paramedic activities not stemming from a fire or car accident as nonexempt. Section 553.212 does not apply here to defeat the partial overtime exception for the paramedics.

*Id*. at 934. Medical functions, even those unrelated to firefighting, are exempt time under the 80/20 rule when performed by dual-function EMS/firefighters.

As the Eighth Circuit's analysis shows, the three principles described above from this Court's EMS-only cases do not apply in the same way to cases involving dual-function EMS/firefighters. First, responding to emergency calls requiring only medical services, and performing activities related to and incidental to EMS duties, is exempt work time for dual-function EMS/firefighters. Second, when analyzing the responses to emergency calls under the 80/20 rule, only emergency calls not related to either firefighting or EMS functions are nonexempt. For example, patient transfers and household accidents are exempt calls for dual-function EMS/firefighters. Third, activities performed during waiting time also are analyzed differently under the 80/20 rule. As with EMS-only workers, time spent simply waiting is exempt. Activities performed during the waiting time also are

17

exempt if they are related or incidental to exempt functions, and both firefighting and EMS functions are exempt for dual-function EMS/firefighters.

Thus, an employer of dual-function EMS/firefighters will lose the fire protection activities exemption under the 80/20 rule only if the employees spend more than 20% of their total work hours on activities unrelated to either firefighting or medical services. If waiting fire department employees perform other public services, by engaging in activities analogous to § 553.212(a)'s example of forest conservation, the employer risks losing the exemption. If the employees perform firefighting and EMS functions, and do nothing during their waiting time other than these duties and related or incidental corollary tasks, however, then the employer's burden of proof under the 80/20 rule likely would be easily satisfied.

C.  Application to this Case.

The district court appears to have applied the incorrect legal standard when making its conclusions of law. The district court's judgment for the EMS employees applied the EMS-only framework of the *O'Neal* line of cases. First, the court determined that because the EMS employees were employed by the fire department, the application of the fire protection activities exemption involved the integral part test of § 553.210(a) rather than the substantially related test of

18

§ 553.215.  The court concluded that the EMS employees are an integral part of the Glynn County fire department.  In stating its reasons for reaching this conclusion, however, the court listed the fact that the EMS employees met the four elements of the firefighter test of § 553.210(a)(1)-(4) and the two parts of the substantially related test of § 553.215.  Second, the court examined whether the County had met its burden of proof under the 80/20 rule.  In making this evaluation, the court applied the *O'Neal* rule that activities related to medical functions are nonexempt.  The court determined that the approximately 4% of total work hours spent responding to medical calls was nonexempt.  The court also noted that although some waiting time was spent on activities related to firefighting, such as maintenance of the fire engines and firefighting equipment, the parties also had stipulated that the EMS employees spend some of their waiting time on maintenance of the EMS vehicles and equipment.  The court apparently relied solely on this latter fact when it concluded:

> There is some evidence in the record that Plaintiffs are required to do some nonexempt work between calls. . . .  It is Defendant's burden to adduce sufficient evidence to the Court to prove by a preponderance of the evidence that Plaintiffs spend less than twenty percent of their on duty time on nonexempt activities.  Defendant has failed to carry that burden.

The court thus held that although the EMS employees fell within the fire protection activities exemption, the County lost the exemption by failing its burden under the

80/20 rule. The court awarded the EMS employees damages for unpaid overtime under the ordinary 40 hours overtime standard.

On the facts of this case, the district court should have applied the dual-function analysis rather than the EMS-only framework. The consequences of this error do not invalidate all of the court's conclusions, however. The questions whether the EMS employees meet the tests of § 553.210(a)(1)-(4) and § 553.215 remain relevant under the dual-function analysis. On the other hand, the court's evaluation of the 80/20 rule was incorrect because the *O'Neal* rule that medical activities are nonexempt does not apply in the dual-function analysis.

Although it did not cite the regulations, the district court held that the County had proven that the EMS employees satisfy the two tests applicable under the dual-function analysis: the § 553.210(a)(1)-(4) firefighter definition and the § 553.215 substantially related test. The court concluded the EMS employees are employed by a fire department, are trained pursuant to the requirements of Georgia law, have the authority and responsibility for fighting fires of any type, and perform firefighting activities and other activities incidental thereto (such as fire station and firefighting equipment maintenance). These conclusions satisfy all four

elements of § 553.210(a)(1)-(4).[7] Similarly, the district court concluded the EMS employees are fully trained in rescue and are regularly dispatched to fires and other firefighting-related emergencies when assigned to EMS units. These are the two elements of the substantially related test of § 553.215. Our review of the record confirms that these legal conclusions by the district court are correct; the County has proven that the EMS employees satisfy both tests. We therefore hold that the dual-function analysis of the DOL opinion letter must be applied in this case.

The district court's application of the 80/20 rule, however, was inconsistent with the dual-function analysis. The district court treated time spent on medical calls as nonexempt. It also cited the EMS employees' maintenance of the EMS vehicles and equipment as evidence that the County had failed to carry its burden under the 80/20 rule because the EMS employees performed an indefinite amount of nonexempt work during waiting time. Under the dual-function analysis, however, both of these activities are exempt time for dual-function EMS/firefighters like the EMS employees in this case.

Regrettably, the record is insufficient for us simply to apply the correct legal standard to the facts. Although the stipulated facts and exhibits supplied by the

---

[7] In addition, the court noted that the EMS employees "are routinely assigned to fire engines, snorkel trucks, and rescue trucks." This conclusion further supports the determination that the EMS employees are firefighters within the meaning of § 553.210.

21

parties address in detail the training and responsibilities of the EMS employees and the number, nature, and length of the calls to which the EMS units responded during the period covered in the lawsuit, they do not adequately reveal the activities, if any, performed by the EMS employees during their waiting time. It appears each side believed it could prevail without this information; at oral argument before this Court, the parties argued past each other, as apparently they did before the district court.[8] The legal dispute in this case, however, cannot be resolved fully without this information.

For purposes of examining both the time spent on emergency calls to which the EMS units respond and the time spent waiting for calls to come in, activities performed by the EMS employees are exempt if they involve directly, or are

[8] In their proposed conclusions of law, the EMS employees argued the County had failed to meet the regularly dispatched prong of the § 553.215 test. The EMS employees therefore asserted the district court did not have to reach the 80/20 rule. In addition, if the court did reach the issue, the EMS employees urged the court to apportion the waiting time according to the proportion of calls. This easily would make more than 20% of total work hours medical and thus nonexempt because the EMS employees maintained medical activities were nonexempt. We rejected this apportionment of waiting time in *O'Neal*, however. *See* 980 F.2d at 681-82. Waiting time is exempt, for both EMS-only and dual-function EMS/firefighter employees, except any portion thereof actually spent performing nonexempt activities (with medical activities being nonexempt for the former and exempt for the latter). *See id.* at 682.

The County's proposed conclusions of law, on the other hand, argued (correctly) that medical time should be counted as exempt time for these employees. The County then concluded without explanation that this alone demonstrated that the 20% limitation on nonexempt activities was not exceeded. The County apparently believed the stipulated facts proved that the *only* activities carried out during waiting time were related either to firefighting or EMS duties. The district court did not read the stipulations that way, however, and did not make a finding of fact that no activities unrelated to either firefighting or EMS duties are performed during waiting time.

related or incidental to, *either* firefighting *or* EMS medical functions. The burden lies on the County to prove affirmatively that no more than 20% of the total work hours of the EMS employees is spent on nonexempt activities. Some parts of the record suggest that the EMS employees do not perform any tasks unrelated to firefighting or EMS duties during waiting time.[9] If this is true, the County would prevail because all of the waiting time (both waiting and activities performed while waiting) would be exempt, and the district court found that about 95% of the EMS employees' work time is waiting time. These indications in the record, however, are too little to support a judgment for either party under the 80/20 rule. Although there is no evidence that the EMS employees engage in forest conservation, road repairs, or any other patently nonexempt activity during waiting time, there simply

---

[9] Two pieces of evidence imply, but are insufficient to prove, the nature of the waiting time activity by the EMS employees. The Stipulated Facts state that the EMS employees perform maintenance and other miscellaneous incidental functions during waiting time. This might mean the employees do nothing else. In Joint Exhibit 4, however, the fire department's own monthly work reports list other tasks. These documents show that in addition to responding to emergency calls, fire department employees attend training sessions, perform fire safety inspections, craft firefighting plans, administer blood pressure tests to citizens, and teach first aid and CPR in the community. It is not clear how these activities affect the 80/20 rule analysis. In the first place, each of these activities probably is exempt time for dual-function EMS/firefighters. Secondly, these hours are not broken down between fire units and EMS units, so it is not clear their performance would push the EMS employees over the 20% nonexempt level. Finally, the number of hours spent on these tasks appears to be a very small fraction of the total hours worked by fire department employees in a given month; this also implies that the 20% limitation is not exceeded. Our description of these two pieces of evidence, however, should make clear that the current record is insufficient for this Court to determine the 80/20 rule. Likewise, the district court had an inadequate basis to rule for or against the County under the 80/20 rule.

23

is insufficient detail about the type and length of activities the EMS employees actually do perform while waiting.

In conclusion, given the state of the record, we cannot determine, by applying the correct legal standard to the record as we normally would, whether the County has met its burden on the 80/20 rule. The parties appear to have believed, each for different reasons, that they did not have to stipulate to the exempt and nonexempt activities, or lack thereof, performed by the EMS employees during their waiting time. The parties must introduce additional evidence concerning the activities undertaken by the EMS employees during their waiting time to enable the district court to apply the 80/20 rule under the dual-function analysis. We therefore vacate the district court's holding under the 80/20 rule and remand the case for further proceedings under the 80/20 rule in the dual-function analysis.

## III. CONCLUSION

We hold that the analysis of the FLSA fire protection activities exemption described in the 1995 DOL opinion letter discussed above applies to dual-function EMS/firefighters like the County's EMS employees in this case. We conclude the district court's evaluation of the elements of the firefighter test of § 553.210(a)(1)-(4) and the substantially related test of § 553.215 was correct. Those tests also apply under the dual-function analysis. We therefore affirm on other grounds the

district court's holding that the EMS employees fall within the fire protection activities exemption. The district court's examination of the 80/20 rule of § 553.212(a), however, was incorrect because the district court should not have treated EMS medical functions and activities as nonexempt. The record in this case is not sufficiently clear for this Court to reach a legal conclusion under the 80/20 rule in the dual-function analysis. We therefore vacate and remand in part the judgment of the district court for further proceedings regarding the 80/20 rule consistent with this opinion.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.