AUER ET AL. *v.* ROBBINS ET AL.

No. 95–897.   Argued December 10, 1996—Decided February 19, 1997

*Michael T. Leibig* argued the cause and filed briefs for petitioners.

*Irving L. Gornstein* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Acting Solicitor General Dellinger, Deputy Solicitor General Kneedler, J. Davitt McAteer, Allen H. Feldman, Nathaniel I. Spiller,* and *Mark S. Flynn.*

*John B. Renick* argued the cause for respondents. With him on the brief were *James N. Foster, Jr.,* and *Judith Anne Ronzio.**

---

*Briefs of *amici curiae* urging reversal were filed for the American Federation of Labor and Congress of Industrial Organizations by *Jonathan P. Hiatt;* for the International Union of Police Associations AFL–CIO et al. by *Richard Cobb;* for the National Association of Police Organizations, Inc., by *William J. Johnson;* for the National Employment Law

Justice Scalia delivered the opinion of the Court.

The Fair Labor Standards Act of 1938 (FLSA), 52 Stat. 1060, as amended, 29 U. S. C. §§ 201 *et seq.*, exempts "bona fide executive, administrative, or professional" employees from overtime pay requirements. This case presents the question whether the Secretary of Labor's "salary-basis" test for determining an employee's exempt status reflects a permissible reading of the statute as it applies to public-sector employees. We also consider whether the Secretary has reasonably interpreted the salary-basis test to deny an

Project, Inc., by *Kenneth E. Labowitz;* and for Non-Union Employees in the Private and Public Sectors by *Brenda J. Carter.*

Briefs of *amici curiae* urging affirmance were filed for the State of Wisconsin et al. by *James E. Doyle,* Attorney General of Wisconsin, *Richard Briles Moriarty,* Assistant Attorney General, and by the Attorneys General for their respective States as follows: *Jeff Sessions* of Alabama, *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *Daniel E. Lungren* of California, *Gale A. Norton* of Colorado, *Richard Blumenthal* of Connecticut, *Robert A. Butterworth* of Florida, *Michael J. Bowers* of Georgia, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *J. Joseph Curran, Jr.,* of Maryland, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Mike Moore* of Mississippi, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *Dennis C. Vacco* of New York, *Thomas W. Corbett, Jr.,* of Pennsylvania, *James S. Gilmore III* of Virginia, and *Christine O. Gregoire* of Washington; for the Chamber of Commerce of the United States of America et al. by *William J. Kilberg, Mark Snyderman, Stephan A. Bokat,* and *Mona C. Zeiberg;* for the New York City Transit Authority by *Richard Schoolman;* for the Department of Water and Power of the City of Los Angeles by *James K. Hahn, Thomas C. Hokinson,* and *Olga Hernandez Garau;* for the Labor Policy Association by *Sandra J. Boyd* and *Daniel V. Yager;* and for the National League of Cities et al. by *Richard Ruda, James I. Crowley,* and *Ronald S. Cooper.*

Briefs of *amici curiae* were filed for Broward County, Florida, by *John J. Copelan, Jr.,* and *Anthony C. Musto;* for the City of New York by *Paul A. Crotty, Leonard J. Koerner,* and *Timothy J. O'Shaughnessy;* for the League of California Cities et al. by *Arthur A. Hartinger, Louise H. Renne,* and *Jonathan V. Holtzman;* and for the International Association of Chiefs of Police, Inc., by *Jody M. Litchford, Wayne W. Schmidt, James P. Manak,* and *Roy Caldwell Kime.*

employee salaried status (and thus grant him overtime pay) when his compensation may "as a practical matter" be adjusted in ways inconsistent with the test.

I

Petitioners are sergeants and a lieutenant employed by the St. Louis Police Department. They brought suit in 1988 against respondents, members of the St. Louis Board of Police Commissioners, seeking payment of overtime pay that they claimed was owed under § 7(a)(1) of the FLSA, 29 U. S. C. § 207(a)(1). Respondents argued that petitioners were not entitled to such pay because they came within the exemption provided by § 213(a)(1) for "bona fide executive, administrative, or professional" employees.

Under regulations promulgated by the Secretary, one requirement for exempt status under § 213(a)(1) is that the employee earn a specified minimum amount on a "salary basis." 29 CFR §§ 541.1(f), 541.2(e), 541.3(e) (1996). According to the regulations, "[a]n employee will be considered to be paid 'on a salary basis' . . . if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." § 541.118(a). Petitioners contended that the salary-basis test was not met in their case because, under the terms of the St. Louis Metropolitan Police Department Manual, their compensation could be reduced for a variety of disciplinary infractions related to the "quality or quantity" of work performed. Petitioners also claimed that they did not meet the other requirement for exempt status under § 213(a)(1): that their duties be of an executive, administrative, or professional nature. See §§ 541.1(a)–(e), 541.2(a)–(d), 541.3(a)–(d).

The District Court found that petitioners were paid on a salary basis and that most, though not all, also satisfied the

duties criterion. The Court of Appeals affirmed in part and reversed in part, holding that both the salary-basis test and the duties test were satisfied as to all petitioners. 65 F. 3d 702 (CA8 1995). We granted certiorari. 518 U. S. 1016 (1996).[1]

## II

The FLSA grants the Secretary broad authority to "defin[e] and delimi[t]" the scope of the exemption for executive, administrative, and professional employees. § 213(a)(1). Under the Secretary's chosen approach, exempt status requires that the employee be paid on a salary basis, which in turn requires that his compensation not be subject to reduction because of variations in the "quality or quantity of the work performed," 29 CFR § 541.118(a) (1996). Because the regulation goes on to carve out an exception from this rule for "[p]enalties imposed . . . for infractions of safety rules of major significance," § 541.118(a)(5), it is clear that the rule embraces reductions in pay for disciplinary violations. The Secretary is of the view that employees whose pay is adjusted for disciplinary reasons do not deserve exempt status because as a general matter true "executive, administrative, or professional" employees are not "disciplined" by piecemeal deductions from their pay, but are terminated, demoted, or given restricted assignments.

---

[1] Respondents contend that the District Court lacked jurisdiction over petitioners' suit by virtue of the Eleventh Amendment. The Board of Police Commissioners, however, does not share the immunity of the State of Missouri. While the Governor appoints four of the board's five members, Mo. Rev. Stat. § 84.030 (1994), the city of St. Louis is responsible for the board's financial liabilities, § 84.210, and the board is not subject to the State's direction or control in any other respect. It is therefore not an "arm of the State" for Eleventh Amendment purposes. *Hess* v. *Port Authority Trans-Hudson Corporation*, 513 U. S. 30, 47–51 (1994); *Lake Country Estates, Inc.* v. *Tahoe Regional Planning Agency*, 440 U. S. 391, 401–402 (1979).

A

The FLSA did not apply to state and local employees when the salary-basis test was adopted in 1940. See 29 U. S. C. § 203(d) (1940 ed.); 5 Fed. Reg. 4077 (1940) (salary-basis test). In 1974 Congress extended FLSA coverage to virtually all public-sector employees, Pub. L. 93–259, § 6, 88 Stat. 58–62, and in 1985 we held that this exercise of power was consistent with the Tenth Amendment, *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528 (1985) (overruling *National League of Cities* v. *Usery*, 426 U. S. 833 (1976)). The salary-basis test has existed largely in its present form since 1954, see 19 Fed. Reg. 4405 (1954), and is expressly applicable to public-sector employees, see 29 CFR §§ 553.2(b), 553.32(c) (1996).

Respondents concede that the FLSA may validly be applied to the public sector, and they also do not raise any general challenge to the Secretary's reliance on the salary-basis test. They contend, however, that the "no disciplinary deductions" element of the salary-basis test is invalid for public-sector employees because as applied to them it reflects an unreasonable interpretation of the statutory exemption. That is so, they say, because the ability to adjust public-sector employees' pay—even executive, administrative or professional employees' pay—as a means of enforcing compliance with work rules is a necessary component of effective government. In the public-sector context, they contend, fewer disciplinary alternatives to deductions in pay are available.

Because Congress has not "directly spoken to the precise question at issue," we must sustain the Secretary's approach so long as it is "based on a permissible construction of the statute." *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843 (1984). While respondents' objections would perhaps support a different application of the salary-basis test for public employees, we

cannot conclude that they compel it. The Secretary's view that public employers are not *so* differently situated with regard to disciplining their employees as to require wholesale revision of his time-tested rule simply cannot be said to be unreasonable. We agree with the Seventh Circuit that no "principle of public administration that has been drawn to our attention . . . makes it imperative" that public-sector employers have the ability to impose disciplinary pay deductions on individuals employed in genuine executive, administrative, or professional capacities. *Mueller* v. *Reich*, 54 F. 3d 438, 442 (1995), cert. pending, No. 95–586.

Respondents appeal to the "quasi military" nature of law enforcement agencies such as the St. Louis Police Department. The ability to use the full range of disciplinary tools against even relatively senior law enforcement personnel is essential, they say, to maintaining control and discipline in organizations in which human lives are on the line daily. It is far from clear, however, that only a pay deduction, and not some other form of discipline—for example, placing the offending officer on restricted duties—will have the necessary effect. Because the FLSA entrusts matters of judgment such as this to the Secretary, not the federal courts, we cannot say that the disciplinary-deduction rule is invalid as applied to law enforcement personnel.

## B

The more fundamental objection respondents have to the disciplinary-deduction rule is a procedural one: The Secretary has failed to give adequate consideration to whether it really makes sense to apply the rule to the public sector. Respondents' *amici* make the claim more specific: The Secretary's failure to revisit the rule in the wake of our *Garcia* decision was "arbitrary" and "capricious" in violation of the Administrative Procedure Act (APA), 5 U. S. C. § 706(2)(A).

It is certainly true that application of the disciplinary-deduction rule to public-sector employees raises distinct is-

sues that may warrant the Secretary's formal consideration; this much is suggested by the veritable flood of post-*Garcia* litigation against public employers in this area, see, *e. g., Carpenter* v. *Denver,* 82 F. 3d 353 (CA10 1996), cert. pending, No. 95–2088; *Bankston* v. *Illinois,* 60 F. 3d 1249 (CA7 1995); *Shockley* v. *Newport News,* 997 F. 2d 18 (CA4 1993); *Atlanta Professional Firefighters Union, Local 134* v. *Atlanta,* 920 F. 2d 800 (CA11 1991). But respondents' complaints about the failure to amend the disciplinary-deduction rule cannot be raised in the first instance in the present suit. A court may certainly be asked by parties in respondents' position to disregard an agency regulation that is contrary to the substantive requirements of the law, or one that appears on the public record to have been issued in violation of procedural prerequisites, such as the "notice and comment" requirements of the APA, 5 U. S. C. § 553. But where, as here, the claim is not that the regulation is substantively unlawful, or even that it violates a clear procedural prerequisite, but rather that it was "arbitrary" and "capricious" not to conduct amendatory rulemaking (which might well have resulted in no change), there is no basis for the court to set aside the agency's action prior to any application for relief addressed to the agency itself. The proper procedure for pursuit of respondents' grievance is set forth explicitly in the APA: a petition to the agency for rulemaking, § 553(e), denial of which must be justified by a statement of reasons, § 555(e), and can be appealed to the courts, §§ 702, 706.

### III

A primary issue in the litigation unleashed by application of the salary-basis test to public-sector employees has been whether, under that test, an employee's pay is "subject to" disciplinary or other deductions whenever there exists a theoretical possibility of such deductions, or rather only when there is something more to suggest that the employee is actually vulnerable to having his pay reduced. Petitioners in

effect argue for something close to the former view; they contend that because the police manual nominally subjects all department employees to a range of disciplinary sanctions that includes disciplinary deductions in pay, and because a single sergeant was actually subjected to a disciplinary deduction, they are "subject to" such deductions and hence nonexempt under the FLSA.[2]

The Court of Appeals rejected petitioners' approach, saying that "[t]he mere possibility of an improper deduction in pay does not defeat an employee's salaried status" if no practice of making deductions exists. 65 F. 3d, at 710–711. In the Court of Appeals' view, a "one-time incident" in which a disciplinary deduction is taken under "unique circumstances" does not defeat the salaried status of employees. *Id.*, at 711. (In this case the sergeant in question, who had violated a residency rule, agreed to a reduction in pay as an alternative to termination of his employment.) The requirement of actual deductions was also imposed in an earlier ruling by the Eighth Circuit, *McDonnell* v. *Omaha*, 999 F. 2d 293, 296–297 (1993), cert. denied, 510 U. S. 1163 (1994), and in an Eleventh Circuit case, *Atlanta Professional Firefighters Union, Local 134* v. *Atlanta, supra*, at 805. Other Circuits have rejected the requirement, *Yourman* v. *Dinkins*, 84 F. 3d 655, 656 (CA2 1996), cert. pending, No. 96–152; *Carpenter* v. *Denver, supra*, at 359–360; *Bankston* v. *Illinois, supra*, at 1253; *Kinney* v. *District of Columbia*, 994 F. 2d 6, 10–11 (CADC 1993); *Abshire* v. *County of Kern*, 908 F. 2d 483, 486–488 (CA9 1990), cert. denied, 498 U. S. 1068 (1991); or else have imposed a requirement of actual deductions only in the face of vagueness or ambiguity in the governing policy, *Michigan Assn. of Governmental Employees* v. *Michigan Dept. of Corrections*, 992 F. 2d 82, 86 (CA6 1993).

---

[2] Petitioners also contend that additional sergeants were actually subjected to disciplinary deductions, but that fact is not established by the portions of the record petitioners cite.

The Secretary of Labor, in an *amicus* brief filed at the request of the Court, interprets the salary-basis test to deny exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay "as a practical matter." That standard is met, the Secretary says, if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood" of such deductions. The Secretary's approach rejects a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy—one which "effectively communicates" that deductions will be made in specified circumstances. This avoids the imposition of massive and unanticipated overtime liability (including the possibility of substantial liquidated damages, see, *e. g., Kinney* v. *District of Columbia, supra*, at 12) in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not "significantly likely" to be invoked against salaried employees.

Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless "'plainly erroneous or inconsistent with the regulation.'" *Robertson* v. *Methow Valley Citizens Council*, 490 U. S. 332, 359 (1989) (quoting *Bowles* v. *Seminole Rock & Sand Co.*, 325 U. S. 410, 414 (1945)). That deferential standard is easily met here. The critical phrase "subject to" comfortably bears the meaning the Secretary assigns. See American Heritage Dictionary 1788 (3d ed. 1992) (def. 2: defining "subject to" to mean "prone; disposed"; giving as an example "a child who is subject to colds"); Webster's New International Dictionary 2509 (2d ed. 1950) (def. 3: defining "subject to" to mean "[e]xposed; liable; prone; disposed"; giving as an example "a country subject to extreme heat").

The Secretary's approach is usefully illustrated by reference to this case. The policy on which petitioners rely is contained in a section of the police manual that lists a total of

58 possible rule violations and specifies the range of penalties associated with each. All department employees are nominally covered by the manual, and some of the specified penalties involve disciplinary deductions in pay. Under the Secretary's view, that is not enough to render petitioners' pay "subject to" disciplinary deductions within the meaning of the salary-basis test. This is so because the manual does not "effectively communicate" that pay deductions are an anticipated form of punishment for employees *in petitioners' category*, since it is perfectly possible to give full effect to every aspect of the manual without drawing any inference of that sort. If the statement of available penalties applied solely to petitioners, matters would be different; but since it applies both to petitioners and to employees who are unquestionably not paid on a salary basis, the expressed availability of disciplinary deductions may have reference only to the latter. No clear inference can be drawn as to the likelihood of a sanction's being applied to employees such as petitioners. Nor, under the Secretary's approach, is such a likelihood established by the one-time deduction in a sergeant's pay, under unusual circumstances.

Petitioners complain that the Secretary's interpretation comes to us in the form of a legal brief; but that does not, in the circumstances of this case, make it unworthy of deference. The Secretary's position is in no sense a *"post hoc* rationalizatio[n]" advanced by an agency seeking to defend past agency action against attack, *Bowen* v. *Georgetown Univ. Hospital,* 488 U. S. 204, 212 (1988). There is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question. Petitioners also suggest that the Secretary's approach contravenes the rule that FLSA exemptions are to be "narrowly construed against . . . employers" and are to be withheld except as to persons "plainly and unmistakably within their terms and spirit." *Arnold* v. *Ben Kanowsky, Inc.,* 361 U. S. 388, 392 (1960). But that is a rule governing

judicial interpretation of statutes and regulations, not a limitation on the Secretary's power to resolve ambiguities in his own regulations. A rule requiring the Secretary to construe his own regulations narrowly would make little sense, since he is free to write the regulations as broadly as he wishes, subject only to the limits imposed by the statute.

## IV

One small issue remains unresolved: the effect upon the exempt status of Sergeant Guzy, the officer who violated the residency requirement, of the one-time reduction in his pay. The Secretary's regulations provide that if deductions which are inconsistent with the salary-basis test—such as the deduction from Guzy's pay—are made in circumstances indicating that "there was no intention to pay the employee on a salary basis," the exemption from the FLSA is "[not] applicable to him during the entire period when such deductions were being made." 29 CFR § 541.118(a)(6) (1996). Conversely, "where a deduction not permitted by [the salary-basis test] is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." *Ibid.*

Petitioners contend that the initial condition in the latter provision (which enables the employer to take corrective action) is not satisfied here because the deduction from Guzy's pay was not inadvertent. That it was not inadvertent is true enough, but the plain language of the regulation sets out "inadverten[ce]" and "made for reasons other than lack of work" as *alternative* grounds permitting corrective action. Petitioners also contend that the corrective provision is unavailable to respondents because Guzy has yet to be reimbursed for the residency-based deduction; in petitioners' view, reimbursement must be made immediately upon the discovery that an improper deduction was made. The language of the regulation, however, does not address the tim-

ing of reimbursement, and the Secretary's *amicus* brief informs us that he does not interpret it to require immediate payment. Respondents are entitled to preserve Guzy's exempt status by complying with the corrective provision in § 541.118(a)(6).

\* \* \*

Petitioners have argued, finally, that respondents failed to carry their affirmative burden of establishing petitioners' exempt status even under the Secretary's interpretation of the salary-basis test. Since, however, that argument was inadequately preserved in the prior proceedings, we will not consider it here. See *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144, 147, n. 2 (1970). The judgment of the Court of Appeals is affirmed.

*It is so ordered.*