**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRIENDS OF IRONBRIDGE PARK; DAVID
R. COSBY; SANDRA B. COSBY,
Plaintiffs-Appellants,

v.

BRUCE BABBITT, SECRETARY, UNITED
STATES DEPARTMENT OF THE INTERIOR;
KEITH EVERETT, Superintendent,
National Park Service; CYNTHIA
WILKERSON, Programs Director,

No. 98-2373

National Park Service; L. DOUGLAS
PRITCHARD, JR., Engineering
Supervisor, Chesterfield County
Engineering Department; ROBERT
STANTON, Director, National Park
Service; LANE B. RAMSEY,
Administrator, Chesterfield County;
RICHMOND FIRST TEE,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-98-481)

Argued: June 10, 1999

Decided: July 22, 1999

Before MURNAGHAN, WILKINS, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Bruce Edwin Arkema, CANTOR, ARKEMA & EDMONDS, Richmond, Virginia, for Appellants. Evelyn Soon-Soon Ying, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Lois J. Schiffer, Assistant Attorney General, Andrew C. Mergen, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Helen F. Fahey, United States Attorney, Debra J. Prillaman, Assistant United States Attorney, Richmond, Virginia, for Federal Appellees; Steven L. Micas, Michael S.J. Chernau, CHESTERFIELD COUNTY ATTORNEY'S OFFICE, Chesterfield, Virginia, for Appellee County; William G. Broaddus, Eugene E. Mathews, III, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellee Richmond First Tee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Friends of Ironbridge Park, David R. Cosby, and Sandra B. Cosby (collectively, "FIP") appeal an order of the district court sustaining a decision of the National Park Service (NPS) that NPS approval is not required for the construction of a public golf course and related facilities in a park that was developed in part with funds awarded under § 6 of the Land and Water Conservation Fund Act (LWCFA) of 1965, as amended. *See 16 U.S.C.A. § 460l-8 (West 1993 & Supp. 1999). FIP

_____

*FIP brought this action against the Secretary of the Department of the Interior, the Superintendent of the NPS, the company that proposed to construct the golf facility, and various other individuals. For ease of reference, we will refer to these parties collectively as "the Secretary."

contends that the NPS acted arbitrarily and capriciously in determining that such construction would not bring about a change in use that would "significantly contravene the original plans for the area." 36 C.F.R. § 59.3(d) (1998). Concluding that the district court correctly sustained the NPS's decision, we affirm.

I.

The LWCFA was enacted in part to provide funds to assist in the development and preservation of outdoor recreation resources. See 16 U.S.C.A. § 460l-4 (West 1993). The Act limits the ability of grant recipients to convert the area defined in the LWCFA project agreement to other than public outdoor recreation use. See id. § 460l-8(f)(3); 36 C.F.R. § 59.1 (1998). The applicable regulations also require that advance notice be given to the NPS for all proposed facility changes; changes "that significantly contravene the original plans for the area must" receive NPS approval. 36 C.F.R. § 59.3(d). In determining whether a proposed change would constitute a significant contravention of the original plans, "a project area should be viewed in the context of overall use and should be monitored in this context." Id.

In 1984, the United States awarded $270,000 to the Commonwealth of Virginia under the LWCFA for assistance in development of Ironbridge Park in Chesterfield County, Virginia (the County). At that time, the development plan for the park involved the construction of many recreational facilities, including an outdoor amphitheater, a swim and wave pool, a skating rink, a nature center, and parking lots. The plan also called for the provision of some open space for general recreational use. The grant was awarded to the Commonwealth to be used for the first phase of development, the construction of "picnic areas, sports and playfields, trails and support facilities." J.A. 418. Although the County completed Phase I of the development, several of the other facilities identified in the development plan--including the amphitheater, nature center, swim and wave pool, and the skating rink--were not constructed. Some of the land that has remained undeveloped is now used by local residents for hiking and mountain biking.

In 1998, the County decided to lease 150 acres of the undeveloped land for construction of a public golf course and related facilities. The

3

County notified the Commonwealth of the proposal, and the Commonwealth in turn notified the NPS pursuant to the postcompletion requirements outlined in the applicable regulation. See 36 C.F.R. § 59.3. After reviewing the materials submitted by the Commonwealth, the NPS concluded that at the time of the approval of the LWCFA project, "there was a clear indication that additional recreation facilities were expected to be developed in future phases" throughout the park and that the proposed golf facility was "not inconsistent with nor [did] it contravene the original intent of" the project. J.A. 537. The NPS therefore decided that federal agency approval of the proposed golf facility was not required.

FIP subsequently initiated this action, seeking a declaration that approval of the NPS is indeed required before the golf facility may be constructed. See 5 U.S.C.A. § 704 (West 1996) (providing for judicial review of final agency decisions). Following a bench trial, the district court sustained the NPS's decision. In so doing, the court emphasized that although construction of the golf facility would displace some hiking and biking trails, other trails would remain, and that even if the master plan with the golf facility was completed, over 50 percent of the park would remain undeveloped.

II.

We must set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A) (West 1996). Under this highly deferential standard, the agency action will be sustained if the record reveals a rational basis for the decision. See Trinity Am. Corp. v. United States EPA, 150 F.3d 389, 395 (4th Cir. 1998).

FIP argues that the NPS acted arbitrarily and capriciously in deciding that its approval was not necessary for construction of the golf facility because such construction would constitute a change in use that would "significantly contravene the original plans for the area." 36 C.F.R. § 59.3(d). FIP contends that "area" in the context of the regulation refers only to the portion of the project site on which the proposed change will occur, i.e., the 150 acres on which the golf facility is proposed to be built. FIP notes that the regulations specifically require federal agency approval prior to converting an area from a

4

passive to an active use, e.g., from a nature trail to a swimming pool, see id., and argues that is exactly what the County proposes to do here.

The Secretary, on the other hand, contends that "area" in the context of the regulation refers to the entire project area, rather than only to the 150 acres on which the golf facility is proposed to be built. We must defer to an agency's construction of its own regulations unless it is "plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal quotation marks omitted). The regulations provide support for that interpretation, as the word "area" is used in § 59.1 to refer to the land depicted in the project boundary map. See 36 C.F.R. § 59.1. Here, the land depicted in the boundary map was the entire 400-acre Ironbridge Park. Accordingly, the Secretary's interpretation is neither plainly erroneous nor inconsistent with the regulation, and it therefore is controlling. See Auer, 519 U.S. at 461.

In view of the meaning of "area" as used in the regulations, it is clear that the NPS did not act arbitrarily and capriciously in determining that the construction of the golf facility would not constitute a change in use of the area from passive to active such that § 59.3(d) would require NPS approval of the change. The original plans were for Ironbridge Park to be used for both active and passive purposes. Because construction of the golf facility on 150 acres of the park will not change the mixed character of the park as a whole, the regulations do not require NPS approval before the golf facility can be constructed. See 36 C.F.R. § 59.3(d) ("a project area should be viewed in the context of overall use" (emphasis added)).

III.

In sum, because we conclude that the NPS acted rationally in deciding that its approval was not required regarding the construction of the golf facility, we affirm.

AFFIRMED

5