11-1960 (L)
*Green Island Power Authority v. Federal Energy Regulatory Comm'n*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 25ᵗʰ day of September, two thousand twelve.

PRESENT: BARRINGTON D. PARKER,
    RICHARD C. WESLEY,
       *Circuit Judges*,
    JOHN GLEESON,*
       *District Judge.*

_____

Green Island Power Authority,

        *Petitioner*,

  v.        11-1960 (Lead)
           11-3792 (Con)

Federal Energy Regulatory Commission,

        *Respondent,*

Erie Boulevard Hydropower, L.P.

        *Intervenor-Respondent.*

_____

FOR PETITIONER:  WILLIAM S. HUANG (Rebecca J. Baldwin, Katharine M. Mapes, *on the brief*), Spiegel & McDiarmid, LLP, Washington, DC.

---

 * The Honorable John Gleeson, of the United States District Court for the Eastern District of New York, sitting by designation.

FOR RESPONDENT:      HOLLY E. CAFER (Micahel A. Bardee,
                     General Counsel, Robert H. Solomon,
                     Solicitor, *on the brief*), Federal Energy
                     Regulatory Commission, Washington, DC.

FOR INTERVENOR:      ROY T. ENGLERT, JR., Robbins, Russell
                     Englert, Orseck, Untereiner & Sauber LLP,
                     Washington, DC (William J. Trunk,
                     Robbins, Russell, Englert, Orseck,
                     Untereiner & Sauber LLP, Washington,
                     D.C.; John A. Whittaker, IV, Katherine L.
                     Konieczny, Winston & Strawn, LLP,
                     Washington, DC; David A. Bono, Mel R.
                     Jiganti, Brookfield Renewable Power,
                     Marlborough, MA, *on the brief*).

Appeal from the Federal Energy Regulatory Commission.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the orders of the Federal Energy Regulatory Commission are **AFFIRMED.**

Petitioner Green Island Power Authority ("GIPA") appeals from three orders issued by Respondent Federal Energy Regulatory Commission ("FERC") following this Court's decision in *Green Island Power Authority v. F.E.R.C.*, 577 F.3d 148 (2d Cir. 2009) ("*GIPA I*").  In *GIPA I*, we vacated a license issued by FERC to Intervenor-Respondent Erie Boulevard Hydropower, L.P. ("Erie") for the School Street Project, an existing hydroelectric project on the Mohawk River.  *Id.* at 149-50.  On remand, FERC was required to determine, *inter alia*, whether Erie's 2005 Offer of Settlement ("2005 Settlement"), which proposed changes to

2

the 1991 license application for the School Street Project ("1991 Application"), "materially amended" the 1991 Application within the meaning of FERC's regulations. *Id.* at 168; 18 C.F.R. § 4.35(f)(1). We assume familiarity with the facts, the procedural history, and the issues presented for review.

We defer to an agency's interpretation of its own regulation unless its interpretation is "plainly erroneous or inconsistent with the regulation" or there is any other "reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 880-81 (2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)). We accept as conclusive FERC's findings of fact if they are "supported by substantial evidence." 16 U.S.C. § 825*l*(b). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Friends of Ompompanoosuc v. F.E.R.C.*, 968 F.2d 1549, 1554 (2d Cir. 1992) (quoting *Allegheny Elec. Co-op., Inc. v. F.E.R.C.*, 922 F.2d 73, 80 (2d Cir. 1990)).

We defer to FERC's interpretation of its own regulation and conclude that substantial evidence supported its decision that the 2005 Settlement did not materially amend

3

the 1991 Application.  A material amendment is defined in FERC's regulations as "any fundamental and significant change" to "plans of development proposed in an application for a license."  18 C.F.R. §  4.35(f)(1).  One example of a "material amendment" is "[a] change in the installed capacity, or the number or location of any generating units of the proposed project if the change would significantly modify the flow regime associated with the project."  18 C.F.R. § 4.35(f)(1)(i).  In *GIPA I*, we examined FERC's determination that the changes proposed to the 1991 Application in 1995 (elimination of the 21-MW turbine) and 2001 (re-addition of that turbine) were not material amendments under this regulation.  FERC's position was that while the change in installed capacity "would result in a change in flows," this would not significantly affect the project's flow regime because "the project would still be required to operate in a run-of river mode, and to provide the same minimum flows in the bypassed reach."  *Erie Boulevard Hydropower, L.P.*, 120 F.E.R.C. ¶ 61,267, 62,184 (2007).  We affirmed FERC's decisions because GIPA "offer[ed] no actual evidence to demonstrate that FERC's conclusion was flawed."  577 F.3d at 163.

On remand, FERC applied the same analysis to determine that the 2005 Settlement did not materially amend the 1991 Application.  Considering past precedent, it concluded that a project's flow regime "is the set of rules governing how flows are to be managed and released from the project," and that its primary elements "are its mode of operation and conditions that specify the amount, location, and timing of any required flow releases."  Order on Remand and Reinstating New License, 131 F.E.R.C. 61,036, 61,228 (2010).  Furthermore, FERC construed the regulation to ask whether the change in installed capacity itself would "cause [or] require a corresponding change" to the flow regime.  *Id.* at 61,229.  Applying this framework, FERC concluded that the proposed changes in installed capacity in the 2005 Settlement did not materially amend the 1991 Application because "the project would still be required to operate in run-of-river mode and could provide the same minimum flows to the bypassed reach of the Mohawk River" proposed in the 1991 Application.  Order Denying Rehearing, 134 F.E.R.C. 61,205, 62,017 (2011).

FERC has consistently interpreted the material amendment regulation to ask whether there is a causal relationship between the change in the installed capacity

5

and the flow regime associated with the project.  Its conclusions that the 1995 and 2001 proposed changes "*would* still . . . provide the same minimum flows in the bypassed reach," Order on Remand and Reinstating New License, 131 F.E.R.C.  61,036, 61,224 (2010) (emphasis added), whereas the 2005 changes "*could* provide the same minimum flows to the bypassed reach," Order Denying Rehearing, 134 F.E.R.C. 61,205,  62,017 (2011) (emphasis added), are not to the contrary.  That the proposed project *would* and *could* provide the same minimum flows despite the proposed change in capacity are simply different ways of illustrating why the changed capacity is not causally linked to the minimum flows.

*GIPA I* thus requires that we once again affirm FERC's determination with respect to the 2005 Settlement. The changes to the minimum flows proposed in the 2005 Settlement were not caused by the proposed changes in installed capacity.  Rather, the changes in minimum flows were independent of the changes in installed capacity.  There was no material amendment because "the project would still be required to operate in run-of-river mode and could provide the same minimum flows to the bypassed reach of the Mohawk River" proposed in the 1991 Application.  Order Denying

6

Rehearing, 134 F.E.R.C. at 62,017. Indeed, it would make little sense if both the removal of the 21-MW unit in 1995 and re-addition of the unit in 2001 were not material amendments (as we held in *GIPA I*), but the re-removal of the 21-MW unit in 2005 was a material amendment merely because of an unrelated proposed increase in minimum flows.

We similarly leave undisturbed FERC's determination that the powerhouse changes associated with substituting the 21-MW unit proposed in the 1991 Application with either an 11- MW unit or with no additional unit did not constitute a material amendment under FERC's regulations. Under 18 C.F.R. § 4.35(f)(1)(ii), a material amendment includes "[a] material change in . . . the location of the powerhouse,. . . . if the change would . . . [c]ause adverse environmental impacts not previously discussed in the original application."

Here, the 2005 Settlement did not propose a material change in the location of the powerhouse. The 1991 Application proposed to house the new 21-MW unit in an addition to the existing powerhouse. The 2005 Settlement proposed either no new generation unit or a new 11-MW generation unit, to be housed in a new powerhouse or powerhouse addition *at the same location*. In either

7

scenario, the location of the powerhouse would not change because it "would continue to exist at the same location, either with or without a new powerhouse or an addition." Order Denying Rehearing, 134 F.E.R.C. at 62,022.

Moreover, FERC did not abuse its discretion with respect to various evidentiary rulings.  For each piece of evidence that GIPA contends was improperly excluded, FERC offered thorough explanations to support its decision to exclude the evidence as unreliable, unpersuasive and/or irrelevant.  Moreover, even where evidence was excluded as untimely, FERC considered whether the evidence was relevant to the issues being reviewed.

Finally, we deny GIPA's motion to take judicial notice of three documents relating to the physical changes to School Street that occurred due to its excavation by Erie between 2007 and 2010.  These letters do not, as GIPA contends, contradict FERC's position on appeal.  FERC's 2007 License Order authorized Erie to excavate the power canal without necessarily installing the potential new turbine. The letters merely seek additional information from Erie and question whether an amendment *might* be required.  Erie provided the requested information, and no further action has been taken.  This does not contradict FERC's position on

8

appeal that the excavation "fell within the range of canal capacity considered in the 2007 License Order."  FERC Br. at 61.  Accordingly, we decline to take judicial notice of the letters.

Because we affirm FERC's determination that the 2005 Settlement did not materially amend the 1991 Application, we need not review FERC's alternative conclusion that the Cohoes Falls Project is not a feasible alternative to School Street.  We have considered GIPA's remaining arguments and, after a thorough review of the record, find them to be without merit.

For the foregoing reasons, the orders of the Federal Energy Regulatory Commission are hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk