# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 7, 2012      Decided January 22, 2013

No. 10-1347

HONEYWELL INTERNATIONAL, INC. AND E. I. DU PONT DE
NEMOURS AND COMPANY,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

ARKEMA INC., ET AL.,
INTERVENORS

———

Consolidated with 10-1348, 10-1349, 10-1350

———

On Petitions for Review of Rules of
the Environmental Protection Agency

———

*Timothy K. Webster* argued the cause for petitioners. With him on the briefs were *James R. Wedeking*, *Richard Ayres*, *Jessica Olson*, *Chet M. Thompson*, *Robert J. Meyers*, and *David Y. Chung*.

*Perry M. Rosen*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief was

*Diane E. McConkey*, Attorney. *Matthew R. Oakes*, Trial Attorney, entered an appearance.

*Dan Himmelfarb* argued the cause for intervenors. With him on the brief were *John S. Hahn*, *Roger W. Patrick*, *Brian J. Wong*, *William J. Hamel*, *Roscoe C. Howard Jr.*, and *Gia V. Cribbs*.

Before: ROGERS, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* ROGERS joins.

Dissenting opinion filed by *Circuit Judge* BROWN.

KAVANAUGH, *Circuit Judge*: Under the Clean Air Act, the Environmental Protection Agency administers a cap-and-trade program regulating the production and consumption of hydrochlorofluorocarbons, a class of ozone-depleting pollutants. (We frown on excessive use of acronyms, but in a case involving a 24-letter word, we think it appropriate to use HCFCs for hydrochlorofluorocarbons.) This cap-and-trade program entails overall caps on production and consumption of various HCFCs for each year, as well as EPA-administered baseline allowances of HCFCs for each participating company. Companies are then permitted to transfer their allowances, subject to certain statutory and regulatory restrictions.

Honeywell and DuPont, whom we refer to collectively as Honeywell, complain that certain 2008 transfers made by their competitors Arkema and Solvay were deemed to permanently increase those competitors' future baseline allowances of HCFC-22. Because there is an overall cap on

HCFC-22 production, this is a zero-sum system: The increased allowances to Arkema and Solvay in turn reduced Honeywell's market share and allowances of HCFC-22. The problem for Honeywell here is that this Court concluded in *Arkema Inc. v. EPA* that those permanent transfers were valid under the Clean Air Act. 618 F.3d 1, 6-9 (D.C. Cir. 2010). Honeywell believes that *Arkema* was incorrectly decided. Absent en banc review, we must adhere to circuit precedent. And because Honeywell's other challenges to the 2008 transfers are meritless, we deny the petitions for review.

I

The Clean Air Act gradually phases out all HCFCs over five regulatory periods spanning to 2030. *See* 42 U.S.C. §§ 7671d(c), 7671e(b). In the meantime, the Act regulates HCFCs through a cap-and-trade program administered by the Environmental Protection Agency. There are overall caps on production and consumption of each HCFC for each year. And for each regulatory period, EPA allots a baseline allowance for each regulated HCFC to each company participating in the cap-and-trade program. EPA has always set baseline allowances by considering historical usage of HCFCs by participating companies.

The Clean Air Act permits companies to transfer their allowances. Two kinds of transfers are permitted – *interpollutant* transfers and *intercompany* transfers. In an interpollutant transfer, a company swaps its allowance of a particular HCFC for a particular year for its allowance of a different HCFC for the same year. *See* 42 U.S.C. § 7671f(b)(1). In an intercompany transfer, two companies swap allowances of the same HCFC. *See* 42 U.S.C. § 7671f(c). Intercompany transfers may permanently affect the trading companies' baseline allowances of that HCFC,

with one company having a higher allowance and one having a lower allowance. 76 Fed. Reg. 47,451, 47,459-60 (Aug. 5, 2011).

In 2008, EPA approved the interpollutant transfers at issue in this case. Arkema made transfers swapping its allowance of HCFC-142b for an increase in its allowance of HCFC-22. Solvay did the same.

In 2009, EPA set baseline allowances for the 2010-2014 regulatory period. EPA did not recognize the 2008 interpollutant transfers by Arkema and Solvay in setting their baseline allowances for HCFC-22. 74 Fed. Reg. 66,412, 66,419 (Dec. 15, 2009). Arkema and Solvay then challenged EPA's rule. In *Arkema Inc. v. EPA*, this Court held that EPA had to honor the transactions EPA previously approved and had to recognize the 2008 transfers in setting Arkema and Solvay's baseline allowances for HCFC-22 for 2010-2014, at least so long as EPA continued to set baselines by considering the historical usage of HCFCs by participating companies. 618 F.3d 1, 6-9 (D.C. Cir. 2010).

Following *Arkema*, EPA incorporated the 2008 transfers into the baseline allowances of HCFC-22 for 2010-2014, thereby reducing Honeywell's HCFC-22 market share and allowances. 76 Fed. Reg. at 47,459. Honeywell filed a petition for review in this Court, challenging the 2008 transfers that formed the basis for the new baseline HCFC-22 allowances for 2010-2014. EPA, along with intervenors Arkema and Solvay, respond that Honeywell lacks standing; that Honeywell's petitions are untimely; and that our decision in *Arkema* forecloses Honeywell's claims. We conclude that we have jurisdiction and that the petitions are timely. But based on *Arkema*, we deny the petitions on the merits.

II

The initial question is whether Honeywell has standing to challenge EPA's approval of the 2008 interpollutant transfers by Arkema and Solvay and the transfers' corresponding effect on the baseline allowances for the 2010-2014 period. To establish standing, Honeywell must show a cognizable injury in fact that is concrete and particularized and actual or imminent; that its injuries are fairly traceable to EPA's allegedly unlawful conduct; and that a favorable ruling will likely remedy its injuries. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Honeywell has suffered an injury in fact. The decrease in Honeywell's market share and in allowances of HCFC-22 is a concrete and particularized injury. Honeywell's injury is fairly traceable to the now-permanent 2008 interpollutant transfers by Arkema and Solvay because the injury would not have occurred but for the 2008 transfers. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 74-75 (1978); *LaRoque v. Holder*, 650 F.3d 777, 789 (D.C. Cir. 2011); *Community Nutrition Institute v. Block*, 698 F.2d 1239, 1247 (D.C. Cir. 1983) ("A plaintiff need only make a reasonable showing that 'but for' defendant's action the alleged injury would not have occurred."). And because Honeywell's market share and allowances of HCFC-22 would not have decreased but for the now-permanent 2008 transfers, invalidating the 2008 transfers would remedy Honeywell's injuries. Honeywell has therefore satisfied all of the requirements of standing.

EPA relatedly suggests that Honeywell's challenge is untimely. We disagree. Although many challenges to EPA action under the Clean Air Act must be filed within 60 days

from the date that the notice appears in the Federal Register, challenges "based solely on grounds arising after" the expiration of the 60-day period are permitted so long as they are filed within 60 days of the new grounds. 42 U.S.C. § 7607(b)(1).

Here, this Court's decision in *Arkema* constitutes after-arising grounds, and Honeywell filed within 60 days of that decision. Honeywell could not have raised its merits arguments until our decision in *Arkema*. In particular, several of Honeywell's arguments depend on the premise that the 2008 interpollutant transfers by Arkema and Solvay were permanent. Prior to *Arkema*, however, EPA viewed the transfers as lasting only for a limited time – that is, not permanently. *Arkema* changed the legal landscape on that issue, which suffices to constitute after-arising grounds under the circumstances of this case.

Having resolved the various threshold arguments in Honeywell's favor, we turn to the merits of Honeywell's arguments.

## III

On the merits, Honeywell's main contention ultimately boils down to a claim that *permanent* interpollutant transfers are prohibited by Section 607 of the Clean Air Act. Honeywell notes that Section 607 permits *interpollutant* transfers of an allowance of one HCFC for an allowance of a different HCFC only "for the same year." 42 U.S.C. § 7671f(b)(1). Honeywell explains, moreover, that there is no similar "for the same year" limitation on *intercompany* transfers. *See id.* at § 7671f(c). Intercompany transfers may permanently affect baseline allowances. Honeywell thus argues that interpollutant transfers are good only for the same

year in which the transfers are made and should not be permanent or affect a company's baseline allowance for a new regulatory period.

Put simply, Honeywell's claim is foreclosed by this Court's decision in *Arkema*. *Arkema* held that EPA, having approved the 2008 interpollutant transfers, had to honor them in the future, at least so long as EPA continued to set baselines by considering the historical usage of HCFCs by participating companies. *Arkema*, 618 F.3d at 6-9. To reach that conclusion, as EPA correctly explains in its brief here, the *Arkema* Court necessarily concluded that permanent interpollutant transfers were permissible under the statute. That conclusion controls in this case.

Honeywell disagrees strongly with this Court's decision in *Arkema*. For that matter, EPA says that it too disagrees with *Arkema*. (Intervenors Arkema and Solvay are of course happy with *Arkema*.) Absent en banc review, we are bound by the *Arkema* decision.

In a roundabout attempt to undermine the now-permanent 2008 transfers, Honeywell also raises longshot procedural challenges to the 2008 transfers themselves. The basic answer to those various arguments is that Honeywell had notice and an opportunity to present its views during EPA's pre-*Arkema* regulatory proceedings, during the *Arkema* litigation, and during EPA's subsequent post-*Arkema* proceedings. Because Honeywell had notice and an opportunity to comment, and EPA's reasonable interpretation of its regulation controls, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997), its procedural objections to the 2008 transfers are unavailing. As is apparent from the briefing, Honeywell's real problem here is the *permanence* of the 2008 interpollutant transfers by Arkema and Solvay and the altered

HCFC-22 allowances for the 2010-2014 period. In other words, Honeywell's real problem is *Arkema*. But a panel cannot remedy that problem.

\* \* \*

We deny the petitions for review.

*So ordered.*

BROWN, *Circuit Judge*, dissenting: In *Arkema*, this Court held that EPA changed the legal landscape by *not* giving effect to the 2008 transfers in the new regulatory period—in other words, that the 2008 transfers had always been permanent. *See* 618 F.3d at 8–9. Thus, *Arkema* cannot constitute after-arising grounds and the petitions for review are untimely.