CALLAHAN, Circuit Judge,
concurring and dissenting:
I concur in parts I, II and III of the majority’s opinion. I agree that the regulation here at issue is reasonable, the Indian canon does not apply, and there has *716 been no unexplained change in agency policy. In other words, I agree that the Secretary reasonably rejected the Tribe’s challenges to the underlying regulation. However, I dissent from part IV of the opinion because the Tribe did not fairly prompt the Secretary of the United States Department of Interior (“the Secretary” or “the Department”) to consider its alleged offer to move its casino and did not ask the district court to consider the alleged offer to move the casino. Moreover, on this record, there is no basis for suggesting that the such an offer would merit relief under the regulation. Our sympathy for a small, struggling tribe does not justify formalizing a claim that was never clearly presented to the Secretary, was not fairly presented to the district court, and is of questionable merit. Our opinion should conclude this litigation.
I
As the opinion notes, the Tribe made its application in 2003. The application was supplemented on several occasions, including on December 22, 2008, and on October 29, 2010. There is nothing in either of these detailed supplements that suggests that the Tribe contemplated closing its Win-River Casino if its application for Strawberry Fields was approved.
Negotiations continued through a meeting in November 15, 2010. It appears that the possibility that the Tribe might close its Win-River Casino if it were allowed to build a casino on Strawberry Fields was first raised in a letter dated December 14, 2010, from Barbara Murphy, Vice Chairperson, Redding Ranchería, to Del Laver-due, Deputy Assistant Secretary-Indian Affairs, Department of Interior. The letter stated:
Since our meeting in Albuquerque, the Tribal Council has met and discussed our options with regard to this application, and we are determined to do whatever is necessary to alleviate any concerns you may have about our current landholdings and gaming operation.
Accordingly, while we contend that our existing gaming facility does not preclude us from obtaining a restored lands opinion for Strawberry Fields, I want to personally assure you of our intent to close our existing facility and relocate our gaming operation to the Strawberry Fields property. Additionally, we are willing to memorialize this intent in an agreement with the Department and look forward to talking to you about [tjhis further.
Several features of this letter are relevant. First, the Tribe continues to press its contention that its “existing gaming facility does not preclude [it] from obtaining a restored lands opinion for Strawberry Field.” Second, the letter offers only the Vice Chairperson’s personal assurance of the Tribe’s intent to relocate its casino to Strawberry Fields. Third, the letter asserts that the Tribe is “willing to memorialize this intent.” Fourth, the Vice Chairperson indicates that she looks forward to talking to the Deputy Assistant Secretary about this matter.
Thus, it is doubtful that the December 14 letter can, or should, be read as conveying a formal offer by the Tribe to close the Win-River Casino once the Strawberry Fields Casino opened. Rather, the Vice-Chairperson offered her personal assurance as to the Tribe’s intent and that the Tribe was “willing to memorialize this intent in an agreement.” Moreover, the letter does not contain any argument or explanation as to why the Tribe’s offer to move its casino might be relevant to the Secretary’s consideration of the Tribe’s application. Particularly in light of the questionable relevance of this offer to the Secretary’s analysis (see part III, infra), the *717 letter is best understood as an attempt to continue negotiations: an effort to negotiate a last minute deal.
Eight days later, on December 22, 2010, the Secretary of the Interior issued an eight-page, single-spaced decision denying the Tribe’s application. A review of the December 22 decision shows that it was carefully crafted and that the preliminary determinations must have been made well before December 14, 2010. In its penultimate section the letter states:
Whether we consider the Tribe’s first request for newly acquired lands to be the trust-to-trust transfers or the subsequent fee-to-trust requests, it is evident that the subject Parcels were not included in either of these requests. Therefore, the Parcels were not “included in the [TJribe’s first request for newly acquired lands since the [TJribe was restored to Federal recognition” and they cannot meet the standard in 25 C.F.R. § 292.12(c)(1).
To meet the alternate standard under 25 C.F.R. § 292.12(c)(2), a tribe must demonstrate that it submitted the land into trust application within 25 years after the tribe was restored to Federal recognition and the tribe is not gaming on other lands.
In this case, the Tribe’s existing gaming facility precludes a finding under this section.
Even if the Tribe’s letter could be viewed as a plea for the creation of an exception to the requirement that “the tribe is not gaming on other land,” which is contrary to its natural meaning, see infra, the December 14 letter contained no explanation or justification for such a request. Accordingly, as the Tribe’s alleged offer to move its casino did not appear to be relevant to the Secretary’s decision, the Secretary did not, and should not be required or expected to, address the offer in any detail. Rather, the Secretary succinctly explained that he denied the Tribe’s application because of its “existing gaming facility.” The offer to move the casino did not change the fact that the Tribe had an existing casino when it submitted its application.
The conclusion that the December 14 letter did not clearly present to the Secretary an alternate proposal of moving the existing casino is supported by the lack of anything in the record suggesting that the Tribe thought otherwise. There is no indication that the Tribe asked the Secretary to reconsider his decision in light of the December 14 letter. Indeed, the Tribe’s complaint filed in the district court does not even mention the December 14, 2010 letter. Paragraph 28 states that the Tribe amended its request on October 29, 2010. Paragraph 24 then states that Department denied the Tribe’s request in the December 22, 2010 letter. There is no mention of the November 15, 2010 meeting or Ms. Murphy’s December 14, 2010 letter.
The existing record does not support the majority’s statement that the Tribe presented the Secretary with an “alternative proposal to close the first casino once the new one was operational.” Maj. at 711. Rather, the possibility of moving the casino appears to have been tentatively raised in a last minute letter with no explanation of why the proposal would be permissible under the applicable regulation. The “alternate proposal” was not addressed in the Secretary’s decision, and the Tribe never asked the Secretary to reconsider his decision in light of its alleged “alternate proposal.” We hold that the Secretary’s denial of the application was otherwise reasonable. This decision should not be undermined by subsequent attempts to re-characterize what happened. Because no “alternate proposal” was fairly presented to the Secretary, his *718 failure to address it cannot be described as arbitrary or capricious. Furthermore, if the “alternate proposal” has any merit, the Tribe presumably can raise it anew with the Department. Such a course is surely preferable to remanding this case to the district court, to remand it to the Secretary, to consider a claim that was not fairly raised before the Department.
II.
Contrary to the majority’s opinion and the Tribe’s representations in its appellate brief, the district court’s 32-page opinion is not based on a misperception that the Tribe sought to operate multiple casinos. As noted, the December 14 letter was not even mentioned in the Tribe’s complaint.
Furthermore, a review of the briefs filed in the district court reveals that the alleged “alternate proposal” was never argued in writing to the district court. The December 14 letter is first mentioned in the Tribe’s September 30, 2011 Motion for Summary Judgment as “summarizing many of the Tribe’s arguments supporting its position that the Property fell within the Restored Lands Exception.”[1] However, the thrust of the motion was that “the validity of the Decision ... depends on the validity of the Regulations.”[2]
The motion does contain a section alleging that “the Assistant Secretary’s Decision violates the APA because he refused to consider important information and arguments submitted by the tribe.” This section does mention the December 14, 2010 letter, but only as supporting the Tribe’s argument that “because the lands upon which the Tribe was conducting gaming were within the original boundaries of the Tribe’s Reservation, that gaming had no. effect on the Tribe’s request that the Property be taken into trust pursuant to the Restored Lands Exception.” The December 14, 2010 letter does not make an appearance in the Tribe’s reply brief.
The only language in the district court’s opinion that arguably implies that the district court thought that the Tribe sought to operate multiple casinos is the third sentence in the opinion that reads: “The Tribe seeks to expand its gaming operations by building a second casino on 230 acres of undeveloped riverfront lands.” However, this is an accurate statement, even if the Tribe intended to close the Win-River Casino. The Tribe did seek to build a “second” casino. Moreover, the Tribe did intend to expand its operations as the proposed Strawberry Fields Casino would be much larger than the Win-River Casino.
The district court did address the Tribe’s claim that the Secretary “refused to consider important information, and found that the Decision was not arbitrary or capricious.” The district court concluded that the Secretary had “explained that the Tribe could not satisfy the alternate criterion for establishing a temporal connection to newly acquired lands, which depends on a tribe conducting gaming on no other lands, see § 292.12(c)(2), because the *719 tribe already operated the Win-River Casino,” and that there was “nothing arbitrary or capricious about this application of the Regulations.” The district court further opined that “[t]he Tribe’s real objection to the Decision appears to be not how Interior applied the Regulations but rather that Interior applied them at all.”
Thus, the district court held that the Secretary reasonably denied the Tribe’s request because the Tribe was already gaming on other land. The district court did not consider (and apparently was not asked to consider) whether the regulation could, or should be, revised or interpreted to allow the transfer of gaming from one location to another. Just as the Secretary’s decision should not be set aside for not addressing an argument that was not clearly raised in the administrative proceedings, the district court should not be reversed for not addressing an argument that the Tribe failed to advance before it. It appears that the Tribe waived its alternate proposal argument by failing to present it to the district court.
Ill
Finally, I cannot agree with the majority’s gratuitous comments on the merits of the Tribe’s “alternate proposal” to close its Win-River Casino and open a casino on Strawberry Fields. The panel is in accord that (1) the regulation is reasonable, (2) the Indian canon does not apply, and (3) there has been no unexplained change in agency policy. These cover the primary issues raised by the Tribe. Indeed, in its reply; brief, the Tribe reiterates that it “has consistently challenged a very specific component of the Secretary’s interpretation; the requirement set forth in 25 C.F.R. § 292.12(c)(2) that the tribe must not ‘already-be gaming on other lands.’” Our agreement with the district court on these three issues should end this litigation, there is no need for further comment.
However, section IV of the majority opinion, after incorrectly accepting as fact both that the Tribe made an alternate proposal to the Department and that the district court’s order contemplated that the Tribe sought to operate multiple casinos,[3] proceeds to offer questionable dicta. The majority recognizes that the regulation contains a prohibition against gaming on other lands, but then comments:
The regulation is not clear, however, that the agency must also look to the date of the application to determine whether the tribe has satisfied the prohibition against gaming on other lands. While the regulation could be so'interpreted, the agency has so far provided no reason why it should. Mowing a restored tribe to move a casino does not appear to conflict with the statutory purpose of ensuring parity among restored and established tribes.
Maj. at 714.
This approach is wrong on a number of fronts. First, it takes liberty with the regulation’s language. The critical subsection reads: “the tribe submitted an application to take the land into trust within 25 years after the tribe was restored to Federal recognition and the tribe is not gaming on other lands.” Why isn’t the most natural reading of the subsection that the Secretary must look to the date of the application in determining whether the application was submitted within the 25 year period and whether the tribe “is not gaming on other lands?” The subsection directs the Secretary to look at what is *720 happening, not what might happen in the future.
Second, this is the Secretary’s position as set forth in the December 22, 2010 decision. The Secretary’s brief reasserts that “the regulations are clear, and contain no provision for an expression of future intent with an undefined time frame.” There is no doubt that throughout the proceedings the Tribe has operated the Win-River Casino. Thus, according to the Secretary, whether the Tribe intended to close the Win-River Casino if it prevailed on its application was “irrelevant.” The Department’s interpretation of its own regulation is controlling because it is not plainly erroneous or inconsistent with the statute. Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (holding that a Secretary’s interpretation of a Department’s regulation is controlling unless plainly erroneous or inconsistent with the regulation). Indeed, the Tribe has not argued, and the majority has not held, otherwise. Moreover, this is not a situation where the Secretary has changed his position during litigation or offered a post hoc rationalization. See Christopher v. SmithKline Beecham Corp., — U.S. -, 132 S.Ct. 2156, 2166-67, 183 L.Ed.2d 153 (2012). Rather, the Secretary has consistently given “is not gaming on other lands ” its ordinary meaning. It is the Tribe that on appeal advances a new proposed definition of the term.
Third, the majority’s approach places the cart before the horse. I agree with the majority that “the Secretary reasonably implemented the restored lands exception,” and that under the Administrative Procedure Act, the Secretary’s “interpretation is owed deference so long as it is reasonable.” Maj. at 712 (citing United States v. Mead Corp., 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); and Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 845, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). We have further held that “[ujnder the APA, we may only set aside an agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” MacClarence v. United States Environmental Protection Agency, 596 F.3d 1123, 1130 (9th Cir.2010) (internal quotation marks and citation omitted). The Tribe has the burden of showing that the Secretary’s interpretation of the regulation is plainly erroneous, and the Secretary had no obligation to anticipate what the Tribe might argue on appeal. Here, the Secretary’s interpretation is reasonable, as the majority essentially admits. Maj. at 714. The Tribe has failed to demonstrate that the Secretary’s reading of “is not gaming on other lands ” was arbitrary, capricious or an abuse of discretion.
Moreover, even if the Secretary’s interpretation of “not gaming” was not the most reasonable reading of the subsection, it is at least sufficiently reasonable to place the burden of proving a different interpretation on the Tribe. However, the record shows that although the Tribe informed the Secretary of its willingness to move its casino, it never offered any arguments to the Secretary or the district court as to why its offer was, or should be, relevant to the interpretation of the regulation. Even the Tribe’s passing argument on this issue in its brief to this court is devoid of any citation to case law or regulation.
Finally, the assertion that moving a casino “does not appear to conflict with the statutory purpose of ensuring parity among restored and established tribes” is dicta, unsupported by anything in the record, and possibly contrary to panel’s reasoning for otherwise affirming the Secre *721 tary’s decision. The Tribe wants to build the Strawberry Fields Casino because it would be bigger and presumably more profitable than the Win-River Casino. But wouldn’t allowing restored tribes, but not established tribes, to move their casinos to newly acquired land alter the balance between restored and established tribes? Perhaps, if the Tribe’s lands had never been confiscated, it might have built its casino at a better location in the first instance, but it is not clear why the Tribe’s particular challenges are, or should 'be, relevant to the Secretary’s interpretation of the regulation. I am at a loss to explain how the majority can otherwise affirm the Secretary’s decision but then suggest that the Tribe’s intent to move its casino rather than operate a second casino might somehow change the Secretary’s interpretation of the regulation.
IV
If the Tribe wants to ask the Secretary to reconsider the December 22, 2010 decision on the basis that “is not gaming on other land ” may, or should be, interpreted to allow a Tribe to move its casino from existing land to newly acquired land, it presumably may do so. I express no opinion as to whether the Secretary should entertain, or grant, such a request. However, having unanimously determined that the Secretary’s interpretation of “is not gaming on other land ” is reasonable, we should not comment on the Tribe’s belated offer to move its casino. This is so because the Tribe did not fairly present its argument to the Secretary or to the district court. Furthermore, the majority’s dicta is contrary to the Secretary’s reasonable interpretation of the regulation, which is entitled to deference, and the dicta is unsupported by facts or legal argument. Accordingly, the majority’s misguided championing of the Tribe’s offer to move the casino misconceives the judiciary’s review function under the Administrative Procedure Act, and is unlikely to produce any actual benefit for the Tribe. Because we should limit our opinion to our determination that the Secretary otherwise reasonably interpreted the regulation and denied the Tribe’s application, I dissent from part IV of the opinion.

. Paragraph 19 in the Motion for Summary Judgement reads:
On December 14, 2010, the Tribe sent a letter to Mr. Laverdure reiterating the discussions that occurred during the November 15, 2010 meeting, and summarizing many of the Tribe's arguments support its position that the Property fell with the Restored Lands Exception.

. The motion stated:
The Assistant Secretary's Decision that the Tribe’s request must be denied was based on the conclusion that the Property did not meet the requirements of the Regulations, in particular 25 C.F.R. §§ 292.2 and 292.7-292.12. The validity of the Decision, therefore depends on the validity of the Regulations.

. The majority states that: "The district court did not consider the Tribe’s alternative offer and construed its application as if it necessarily contemplated the operation of multiple casinos.”