

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PHOENIX CEMENT COMPANY, an enterprise division of the Salt River Pima-Maricopa Indian Community, | No. 13-73383 |
| Petitioner, | |
| v. | MEMORANDUM[*] |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | |
| Respondent. | |

| | |
|---|---|
| STATE OF ARIZONA, EX REL. HENRY R. DARWIN, DIRECTOR, ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY, | No. 13-73393 |
| Petitioner, | |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; GINA MCCARTHY, Administrator, United States Environmental Protection Agency, | |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

|  | |
|---|---|
| Respondents. | |

<br>

| | |
|---|---|
| ARIZONA MINING ASSOCIATION, <br><br> Petitioner, <br><br> v. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY, <br><br> Respondent. | No. 13-73401 |

On Petition for Review of a Final Rule of the
Environmental Protection Agency

Argued and Submitted March 9, 2015
San Francisco, California

Before: BERZON, BYBEE, and OWENS, Circuit Judges.

The facts of this case are known to the parties, and we do not repeat them here. The State of Arizona, the Arizona Mining Association, and Phoenix Cement Company petition for review of EPA's final "Phase 2" rule approving Arizona's regional haze State Implementation Plan ("SIP") in part and disapproving it in part. We deny the petitions in all respects.

EPA's conclusion that Sundt Unit 4 is Best Available Retrofit Technology ("BART")-eligible was not arbitrary and capricious. Section 169A provides that

"each major stationary source which is in existence on August 7, 1977, but which has not been in operation for more than fifteen years" is subject to BART controls. 42 U.S.C. § 7491(b)(2)(A). The Regional Haze Rule defines a "BART-eligible source" as "an existing stationary facility." 40 C.F.R. § 51.301. "Existing stationary facility" is, in turn, defined to include "any of [certain enumerated categories of] stationary sources, including any reconstructed source, which was not in operation prior to August 7, 1962, and was in existence on August 7, 1977." *Id.* Sundt Unit 4 was in existence in 1977 but not in 1962. The texts of both the statute and the governing regulation are thus fully consistent with rendering Sundt Unit 4 BART eligible.

One part of EPA's BART Guidelines can be read to exempt sources reconstructed after 1977 from BART. *See* 40 C.F.R. pt. 51, app. Y, Section II.A.2. But Sundt Unit 4 is not covered by the Guidelines. And the Guidelines' preamble states that "sources reconstructed after 1977, which reconstruction had gone through [New Source Review ("NSR")/Prevention of Significant Deterioration ("PSD")] permitting, are not BART-eligible," indicating that EPA interprets Section 169A and the Regional Haze Rule to exempt only those post-1977 reconstructed sources subject to PSD permitting. *See* Regional Haze Regulations

3

and Guidelines for Best Available Retrofit Technology (BART) Determinations, 70 Fed. Reg. 39,104, 39,111 n.9 (July 6, 2005).

Given the statutory and regulatory language and the limited usefulness of the Guidelines as applied here, we defer to EPA's reasonable construction of the statute and its own regulations as exempting only those sources reconstructed after 1977 *and* subject to PSD permitting. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842–44 (1984). Under this interpretation of Section 169A and the Regional Haze Rule, EPA permissibly determined that Sundt Unit 4, which did not undergo PSD permitting when it was reconstructed, remains BART-eligible.

EPA's determination that the Nelson Lime Plant is subject to BART was similarly not arbitrary and capricious. If an agency gives a "satisfactory explanation for its action including a rational connection between the facts found and the choice made," it has not acted arbitrarily or capriciously, and we will not "substitute [our] judgment for that of the agency." *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted)). Here, EPA's final rule adequately addressed why the State's use of a three-year averaging approach to calculating the

4

impact of the plant's emissions on visibility at Grand Canyon National Park was inappropriate. EPA explained that the "subject-to-BART" inquiry is a screening inquiry that should logically err on the side of being overinclusive and that using a three-year average can obscure the fact that data from individual years indicate that a source's impact on visibility is problematic. This was a reasonable explanation for EPA's action.

EPA's conclusion that a BART determination was required for $NO_X$ at both the Miami and Hayden smelters was also not arbitrary and capricious. EPA interprets the Regional Haze Rule to require a BART determination for any pollutant at a source that exceeds the de minimis threshold, once that source has been determined subject to BART. That interpretation is entitled to deference, because it is not "plainly erroneous or inconsistent with the regulation," *Auer*, 519 U.S. at 461 (citation and internal quotation marks omitted). The Regional Haze Rule does not expressly provide for any exemption of specific pollutants from BART determinations except through the 40-tons-per-year de minimis exception. *See* 40 C.F.R. § 51.308(e)(1)(ii). EPA's conclusion that the State had not shown that $NO_X$ emissions from the two smelters were less than the de minimis threshold was also not arbitrary and capricious, as EPA adequately explained that it could not accept the petitioners' assertions about the smelters' potential to emit $NO_X$ in the

absence of evidence of physical or operational limitations that would keep the smelters' emissions under the de minimis threshold.

EPA's conclusion that Arizona's BART determination for $SO_2$ at the two copper smelters was inadequate was likewise not arbitrary and capricious. EPA gave a reasoned explanation for this conclusion by pointing out that the State had failed to consider whether certain new control technologies for $SO_2$ could be adapted for use at the smelters.

EPA's disapproval of Arizona's reasonable progress goals was not arbitrary and capricious. As EPA noted in its final rule, after the State identified the categories of sources that contributed most to $NO_X$ and $SO_2$ emissions in the state, the State deliberately chose not to conduct the four-factor analysis required by 42 U.S.C. § 7491(g)(1) and 40 C.F.R. § 51.308(d)(1)(i)(A) with respect to those sources. It was not arbitrary and capricious for EPA to conclude that this reasonable progress analysis was inadequate.

Finally, it was not arbitrary and capricious for EPA to determine that the State's four-factor reasonable progress analysis for the Phoenix Cement Plant was unacceptable. EPA's explanation for its disapproval of this analysis—*i.e.*, that the analysis incorporated flawed data that caused the State to overestimate the cost of

installing and operating additional pollution controls at the Phoenix plant—was adequate to support its action.

The petitions for review are **DENIED.**

13-73383, 13-73393, 13-73401

*Phoenix Cement Company v. U.S. EPA*

BYBEE, Circuit Judge, concurring in part and dissenting in part:

I agree with the panel in every respect save one: I would hold that EPA's determination that Sundt Unit 4 is BART-eligible was arbitrary and capricious. On that issue, I must dissent.

Section 169A of the Clean Air Act and the Regional Haze Rule both state that only sources "in existence on August 7, 1977" are BART-eligible. 42 U.S.C. § 7491(b)(2)(A); 40 C.F.R. § 51.301. In the BART Guidelines, EPA explained that the "'in existence' test[] appl[ies] to reconstructed sources," which "are treated as new sources as of the time of the reconstruction." 40 C.F.R. pt. 51, app. Y, § II.A.2. Thus, a source constructed before 1962 but reconstructed between 1962 and 1977 would be BART-eligible. "Similarly," EPA explained, "any emissions unit for which a reconstruction 'commenced' after August 7, 1977, is not BART–eligible." *Id.* This is a cogent interpretation of Section 169A and the Regional Haze Rule, and on this interpretation, Sundt Unit 4—which was reconstructed after August 7, 1977—is not BART-eligible.

EPA now contends, however, that a source reconstructed after August 7, 1977, is only exempted from BART if it went through Prevention of Significant

1

Deterioration (PSD) permitting, which the Clean Air Act requires for sources constructed or modified after that date. *See* 42 U.S.C. § 7475(a). EPA says that this requirement is necessary in order to give effect to Congress's intent, in enacting the Clean Air Act, that all sources be subject either to BART (if constructed or reconstructed before August 7, 1977) or to PSD (if constructed or reconstructed after that date).

The problem with EPA's argument is that Sundt Unit 4 was exempted from PSD permitting by a separate act of Congress—the Power Plant and Industrial Fuel Use Act of 1978—that operated independently from the Clean Air Act. The Fuel Use Act gave the Department of Energy the authority to require utilities to convert oil- or natural gas-powered generating stations to burn coal as a means of reducing America's dependence on imported oil. Arizona Blue Br. 31. The Fuel Use Act exempted units that were ordered to be converted from PSD permitting in order to facilitate their speedy conversion. *Id.* at 32 (citing 42 U.S.C. § 7411(a)(8) and 40 C.F.R. § 60.14(e)(4)). Sundt Unit 4 was reconstructed in 1987 pursuant to the Fuel Use Act—in fact, it appears to have been the *only* power plant in the country that was ordered to be reconstructed under the FUA.

We thus have two statutory schemes in play and must give effect to both. The Clean Air Act, as interpreted through EPA's Guidelines, excluded sources

2

constructed or reconstructed after August 7, 1977, from BART, on the expectation that they would be subject to PSD instead. A separate statute, the Fuel Use Act, subsequently exempted Sundt Unit 4 from PSD. The unit's exemption under the Fuel Use Act is independent of its status under the Clean Air Act: as amicus Tucson Electric Power Company puts it, "Sundt Unit 4's exemption from PSD [in the Fuel Use Act] does not change the fact that, for purposes of the [Clean Air Act] and its visibility program, Sundt Unit 4 came into existence in 1987." EPA thus cannot point to Sundt Unit 4's exemption from PSD as a reason why Sundt Unit 4 should be considered BART-eligible.

The majority upholds EPA's determination by pointing out that Section 169A and the Regional Haze Rule are ambiguous on the question whether a source in Sundt Unit 4's unique situation is BART-eligible and then adverting to *Auer* and *Chevron* deference. But I cannot go along with that reasoning. EPA's litigation position concerning Sundt Unit 4 is not a reasonable interpretation of the Clean Air Act and the Regional Haze Rule; EPA is simply seeking a *sui generis* exception to the general BART-eligibility framework found in the Act and the Rule in order to prevent Sundt Unit 4 from, as EPA's brief puts it, "escap[ing] *both* PSD review and a BART analysis." We need not and should not defer to such ad-hoc reasoning.

3

I respectfully dissent.