The Totalization Agreement does not, however, designate as covered employment, or recognize as equivalent to covered employment, paid work in both countries, plainly or otherwise. Plaintiffs do not, because they cannot, point to specific language in the Totalization Agreement to that express effect. Plaintiffs rather point to the structure and purpose of the Totalization Agreement as a whole, indeed to the structure and purpose of any totalization agreement. See Pls.' Reply Br. 5 ("[S]uch agreements [i.e. , totalization agreements] plainly designate 'employment' to cover all periods of employment ('periods of coverage') ...."). But Plaintiffs have fundamentally misconceived this structure and purpose in their briefing.
In their fullest treatment of the argument, Plaintiffs contend,
In reducing Plaintiffs' benefits, SSA failed to recognize the coverage of employment under the social security laws listed in Article II in the "General Provisions" section of the [Totalization Agreement]. The definition of "period of coverage" in Article I of the same section pertains to employment or self-employment "as defined or recognized as a period of coverage by the laws under which such period has been completed," in this case, the U.S. and Canadian social security laws. The section "Provisions on Coverage," or Articles V and VI, address, among other things, the prevention of dual coverage/taxation in regard to employment or self-employment covered in Articles I and II. Benefit totalization is addressed in Articles VII and VIII in the section "Provisions on Benefits." The prevention of dual coverage/taxation and benefit totalization cannot be confused with the coverage of employment or self-employment in Articles I and II.
Pls.' Br. Supp. 13-14.
The Totalization Agreement defines "period of coverage" basically identically to the Act's definition, 42 U.S.C. § 433(b)(2), as follows:
'Period of coverage' means, a period of payment of contributions or a period of earnings from employment or self-employment, as defined or recognized as a period of coverage by the laws under which such period has been completed, or any similar period insofar as it is recognized by such laws as equivalent to a period of coverage; a period of residence shall not be recognized as a period of coverage[.]
Totalization Agreement, art. I, ¶ 6. Outside this definition, the defined term "period of coverage" appears only once in the Totalization Agreement, in relation to a certain class of spouses and dependents. Id. , art. VI, ¶ 2. Article II provides that "laws" for the purposes of the Totalization Agreement means the social security laws of the United States and Canada, including title *1001 II of the Act, 42 U.S.C. §§ 401 - 434, and related provisions of the Internal Revenue Code. Id. , art. II, ¶¶ 1-3.
Plaintiffs' argument, which is less than pellucid, appears to be that "paid work" approximates a dictionary definition of "employment" (though whence precisely Plaintiffs have drawn this phrase is unknown, for it appears neither in the Totalization Agreement nor in the cited sections of the Act); the Totalization Agreement recognizes that paid work may occur in either country and may give rise to periods of coverage under the social security laws of either country; therefore, the Totalization Agreement recognizes paid work in both countries as equivalent to " 'employment' as defined in section 410," or covered employment. 42 U.S.C. § 415(a)(7)(A). Plaintiffs' upshot is clear, in any event: a period of coverage in one country counts as a period of coverage in the other; "covered" in one country ipso facto means "covered" in the other. Pls.' Br. Supp. 6 ("Because Plaintiffs' benefits are based on earnings for service that constitutes employment or self-employment under Canadian or Québec law, the Social Security Act also recognizes those services as employment or self-employment, i.e. covered service."), 20 ("[B]ecause the [Totalization Agreement] designates and recognizes as equivalent to employment paid work in either country, work in Canada as a Canadian resident is not 'non-covered employment' and does not trigger application of the WEP[.]").
In fact, the Totalization Agreement lays down exactly the opposite rule: "covered" in one country ipso facto means "noncovered" in the other. Plaintiffs overlook or misunderstand the statutory command that "employment" under any totalization agreement "shall ... result in a period of coverage" under either the foreign or the domestic social security system, "but not under both [.]" 42 U.S.C. § 433(c)(1)(B)(i) (emphasis added). To effectuate this command, section 233 requires that a totalization agreement establish "the methods and conditions for determining under which system," foreign or domestic, a period of coverage arises. Id. § 433(c)(1)(B)(ii). The Totalization Agreement's solution to this choice-of-law problem is classically territorial. It chooses, with exceptions, lex loci operarum , the law of the place of employment: "Except as otherwise provided in this Article, an employed person who works in the territory of one of the Contracting States shall, in respect of that work, be subject to the laws of only that Contracting State." Totalization Agreement, art. V, ¶ 1. (The same rule obtains in all totalization agreements to which the United States is a party. Christians, supra , at 94.) Thus, in general, an employee working in Canada accrues coverage subject to Canada's social security laws; an employee working in the United States accrues coverage subject to the Act.
As noted, there are exceptions to the general rule of territoriality. For example, if an employee working in the United States is sent by her employer to work in Canada, she continues to accrue coverage under the Act, not under Canada's social security laws, unless her time abroad exceeds sixty months. Id. , art. V, ¶ 2(a). This is a useful example of "service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment" under a totalization agreement. 42 U.S.C. § 410(a)(C). Absent the Totalization Agreement, the employee's work in Canada (assuming her employer is not American) would not be " 'employment' as defined in section 410," or employment covered by U.S. Social Security. Id. § 415(a)(7)(A). See id. § 410(a)(A)-(B). The Totalization Agreement "designate[s] as [covered] employment or recognize[s]
*1002 as equivalent to [covered] employment," id. § 410(a)(C), the employee's otherwise noncovered service in Canada by causing her to "be subject to the laws of only [the United States] in respect of that work," Totalization Agreement, art. V, ¶ 2(a); that is, by causing her otherwise noncovered service to be covered under the Act and subject to Social Security contribution requirements. I.R.C. §§ 3101(a), 3121(b)(C).
This reading of the text of section 210(a)(C) is supported by its legislative history. Section 210(a)(C) was written into the Act by the Social Security Amendments of 1983, Pub. L. No. 98-21, sec. 322(a)(1), 97 Stat. 65, 120-21. (As already noted, the WEP was added by the same statute. Sec. 113, 97 Stat. at 76-79.) The conference report's summary of then-current law noted that, "through an inadvertent drafting error[,] earnings that are intended to be covered under [U.S. Social Security] pursuant to an international social security agreement [i.e. , a totalization agreement] are not covered because U.S. Social Security taxes cannot be imposed on the earnings." H.R. Rep. No. 98-47, at 150 (1983) (Conf. Rep.) (capitalization regularized), as reprinted in 1983 U.S.C.C.A.N. 404, 440. Section 210(a)(C), in concert with an identical amendment to the definition of "employment" in the Internal Revenue Code, sec. 322(a)(2), 97 Stat. at 121 (amending I.R.C. § 3121(b) ), were intended to remedy the problem by "provid[ing] for the imposition of Social Security taxes if an international social security agreement provides for coverage under the U.S. Social Security System." H.R. Rep. No. 98-47, at 150 (capitalization regularized), as reprinted in 1983 U.S.C.C.A.N. at 440. The conference report thus confirms that a totalization agreement "designate[s] as employment or recognize[s] as equivalent to employment," 42 U.S.C. § 410(a)(C), when it subjects an employee's otherwise noncovered service to coverage and contribution under the Act.
Plaintiffs argue further that SSA's application of the WEP to their CPP/QPP benefits violates article IV of the Totalization Agreement because Canada does not reciprocally reduce Plaintiffs' CPP/QPP benefits based on their U.S. Social Security benefits. See Dkt. 92 Ex. 1 (Plaintiffs' declarations). Article IV provides in relevant part as follows:
Unless otherwise provided in this Agreement, the persons designated in Article III (a) ["Nationals of either Contracting State"], (b) ["Refugees"], (c) ["Stateless persons"] or (d) ["Other persons with respect to the rights they derive from a national of either Contracting State, a refugee or a stateless person"] who reside in the territory of either Contracting State shall, in the application of the laws of a Contracting State, receive equal treatment, with respect to the payment of benefits, with the nationals of that Contracting State.
Totalization Agreement, art. IV, ¶ 1. Whatever Plaintiffs' construction of this provision may be, it unambiguously does not entitle them to any relief. Article IV says that the United States may not discriminate in the payment of Social Security benefits in favor of its own citizens against Canadians, refugees, stateless persons, or their spouses and dependents living either in the United States or Canada. There is no evidence or even any contention that SSA applies the WEP to Canadians (or refugees or stateless persons or their spouses and dependents) in circumstances where it would not also apply the WEP to Americans. Plaintiffs' argument on this point fails.
The weakness of Plaintiffs' reasoning is on clear display in the decision of an administrative law judge (ALJ) purporting to adopt it. In a "Notice of Supplemental *1003 Authority," Dkt. 131, Plaintiffs have tendered the decision of an ALJ reversing SSA's application of the WEP to the claimant's Social Security retirement benefits. Dkt. 131 Ex. 1. The claimant was represented by Plaintiffs' counsel, Dkt. 131, at 1, who appears to have advanced the same arguments before the ALJ as before us. The ALJ put the case as follows:
The claimant was born on February 12, 1950, and worked in Belgium from 1972 through 1992. This was sufficient to become fully eligible for Belgian social security retirement benefits. He emigrated to the United States in 1993 and began working under the retirement provisions of Social Security Act in 1994, and did so through 2016, earning 80 quarters of coverage towards U. S. retirement. The United States and Belgium have entered into a Totalization Agreement. The purpose of the agreement is to provide a retiree who has worked in the two countries with the ability to combine quarters of coverage from the two nations in order to qualify for a pension, where he would not otherwise have been able to do so. The claimant was not working for an American company in Belgium, and his earnings in Belgium were therefore not covered by the Social Security Act. ( 20 CFR 404.1004(a) ). Section 210 of the Social Security Act, ( 42 USC 410 ), provides that (a) employment means any service irrespective of citizenship or residence in the United States, (c) regardless of where or by whom performed.
[SSA's] Program Operations Manual System RS 00605.386 provides that WEP will not apply to workers in countries where there is a Totalization Agreement when the claimant is entitled to a regular U. S. benefit as well as a foreign benefit, and not receiving any other pension based on noncovered work. The claimant argues that his work was covered by the Belgian retirement system and as such is covered work. He argues further that the agreement requires reciprocity of treatment, (Article 3 of The Agreement): the claimant testified that a Belgian citizen would not be subject to a WEP if receiving U. S. benefits in Belgium. He was fully qualified for a Belgian pension and fully qualified for a U. S. pension, independently of one another.
Section 215(a)(7) of the Act [i.e. , the WEP] provides for a reduction formula for those qualifying for Social Security and a pension based on noncovered employment. This more commonly applies to U. S. workers under a retirement plan provided by a local county or state government, independent school district, railroad retirement, or other such entity. Its purpose is to eliminate an unintended advantage that Social Security gives to workers with low earnings, or who have not satisfied the ordinarily required quarters of coverage due to age or other agreement allowances with these local authorities. The low wage earners in these cases receive a heavily weighted benefit for wages earned over a short time, compared to those qualifying under the regular system. The equalizing factor is the reduction by the Windfall Elimination Provision. (WEP). The claimant is not seeking to defeat the purpose of the provision, and is not receiving an advantage over other workers. He has fully qualified under both the Belgian and U. S. systems. To apply the provision to him unduly penalizes him for 44 years of covered service.
[SSA] argues that the participation of Belgium and the U. S. in the Totalization Agreement is the trigger of the WEP by its very existence, whether or not it applies herein, even though the claimant's quarters of coverage were not totalized. 42 USC section 415(a)(7)(E) states, however, that WEP shall not apply to a totalized benefit because each country pays a portion of the totalized *1004 benefit amount. 42 USC section 433(c)(l)(c). It follows that if each country pays the entire amount of two separate programs in their respective countries, the WEP would not apply as well. The claimant's attorney ... notes that each country recognizes the quarters of coverage of the other country under the Agreement. The Windfall Elimination Provision ( Public Law 98-12 ) specifically states that the WEP does not apply to anyone with 30 years of coverage (YOC), as this is a specific exemption. There would be no advantage of weighting benefits after thirty years. The claimant's totalized quarters of coverage would substantially exceed 30 years in this instance. The claimant's employment was not "noncovered" service, as it was covered by the national retirement systems in both countries, and not by a private pension provider, as [SSA] has characterized it.
Dkt. 131 Ex. 1, at 6-7 (citation brackets changed to parentheses) (record citations omitted) (sic passim ).
First, the ALJ begs the major premise of the entire argument by asserting, without analysis and without so much as a citation to the operative totalization agreement, that the claimant had "44 years of covered service." Id. at 7. Second, benefit reduction based on that part of the claimant's career during which he made no contributions to U.S. Social Security is the opposite of an "undue[ ] penal[ty]," id. ; it is the very purpose of the WEP. Third, as will become clearer below, it does not follow that, because a totalized benefit payment is excluded from the WEP, nontotalized benefit payments from pensions for which the worker is independently fully eligible should be excluded from it as well. As our sister court for the District of Kansas has explained,
[t]hat argument ignores the different purposes of [the WEP and benefit totalization]. The [purpose of the] totalization provision [ 42 U.S.C. § 433(c)(1) ] is to provide a social security benefit to potential beneficiaries who would not otherwise be eligible for benefits because of periods of employment insufficient to qualify under either of two systems.... The windfall elimination provision, on the other hand, is designed to preclude the payment of weighted (90%) benefits to a beneficiary with a relatively short career under social security who receives another pension based on substantial noncovered work. [Claimants who are] eligible for benefits under both systems [are] therefore[ ] not in need of the savings provisions of a totalization agreement. The purpose of the windfall elimination provision is applicable, but the purpose of the totalization provision is not applicable,
to claimants like Plaintiffs. Vanlerberghe v. Apfel , 82 F.Supp.2d 1212, 1215 (D. Kan. 2000).
Plaintiffs have tendered another, similar ALJ decision in a different case. Dkt. 123 Ex. 1. Discussion of that opinion would not add significantly to our analysis here, however, as it appears to simply lift in conclusory fashion Plaintiffs' above-quoted assertions concerning the operation of articles I and II of the Totalization Agreement. Id. at 8 (holding with no analysis that "[t]he U.S./Canada Agreement designates as equivalent to employment paid work in both countries"). We do find it telling that even the proponents of Plaintiffs' argument have failed to give a coherent, cogent account of it. If a persuasive articulation of a legal position cannot be found among one lawyer and two judicial officers who propound it, likely that is because it has none. Plaintiffs also spill a good deal of ink discussing two tax cases, Eshel and Erlich v. United States , 104 Fed. Cl. 12 (2012), but these cases are either irrelevant or not supportive of Plaintiffs' position.
*1005 Finally, Plaintiffs' reliance on Rabanal v. Colvin , 987 F.Supp.2d 1106 (D. Colo. 2013), is misplaced. That case, like this one, was an action for judicial review of an adverse SSA decision, and concerned the interaction of a Spanish pension plan and the WEP's implementing regulation, 20 C.F.R. § 404.213, which provides in part that SSA will apply the WEP to "[p]ensions from noncovered employment outside the United States[,] includ[ing] both pensions from social insurance systems that base benefits on earnings but not on residence or citizenship, and those from private employers." Id. § 404.213(a)(3).
The court found that the Spanish plan paid benefits based on a worker's "contribution payments"; found nothing in the record suggesting that such "contribution payments" were based on "earnings," as required by the WEP, 42 U.S.C. § 415(a)(7)(A) ; faulted SSA for equating "earnings" with "work" in its internal operations manual as "not clearly justified"; and, rather than remand to SSA, entered judgment for the claimant because the ALJ had established as the law of the case that the Spanish pension "base[d] benefits on ... residence or citizenship," 20 C.F.R. § 404.213(a)(3), by finding that the claimant's Spanish benefits were "based on his status as a citizen of Spain." 987 F.Supp.2d at 1111-13. In dicta (they were dicta because even if rejected, the same result would obtain under the court's reasoning, see United States v. Crawley , 837 F.2d 291, 292-93 (7th Cir. 1988) ), the court noted that the WEP's implementing regulation precludes application of the WEP to pensions from social security systems that base benefits on residence or citizenship, "regardless of whether [they ] [are ] also based on earnings ." Rabanal , 987 F.Supp.2d at 1112 (emphasis added).
Plaintiffs rely on these Rabanal dicta to argue that SSA has misinterpreted and misapplied the WEP's implementing regulation. It is not at all clear that the Colorado district court's reading of the regulatory language "pensions from social insurance systems that base benefits on earnings but not on residence or citizenship," 20 C.F.R. § 404.213(a)(3), is the correct one. Even if we adopted Rabanal 's reading, Plaintiffs could prevail only if the CPP and QPP are in fact pensions based at least in part on residence or citizenship, a point which Defendants dispute persuasively. Defs.' Br. Supp. 18-21.
But the point is in any event immaterial. We have already concluded that SSA's application of the WEP to Plaintiffs' CPP/QPP benefits is lawful as a matter of the unambiguous text of the Act and the Totalization Agreement. There is thus no cause to address whether SSA's interpretation of the Act is reasonable under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc. , 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), nor whether SSA's interpretation of the WEP's implementing regulation is plainly erroneous or inconsistent with it under Auer v. Robbins , 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). "[T]he intent of Congress is clear, [so] that is the end of the matter[.]" Chevron , 467 U.S. at 842, 104 S.Ct. 2778.
In sum, totalization agreements establish arrangements under which transnational workers pay into and accrue coverage under only one country's social security system at a time. Precisely because coverage by one country's system precludes coverage by the other's, benefit totalization under such agreements permits otherwise unfairly penalized workers to draw one pension in exchange for one career's worth of social security taxes, though paid to two different sovereigns. And, again, precisely because coverage by one country's system precludes coverage by the other's, the WEP precludes otherwise unfairly advantaged workers from *1006 drawing two pensions in exchange for one career's worth of social security taxes.
Plaintiffs' theory of entitlement would stand this entirely sensible system on its head. Plaintiffs would rewrite a provision designed to eliminate windfalls into a windfall guarantee: workers would receive benefits from a sovereign for work that by hypothesis the sovereign did not tax. Plaintiffs would further obviate the entire congressional design behind totalization agreements: if Plaintiffs' position were accepted, no benefit totalization or combination of periods of coverage would ever be required. All periods of coverage under the foreign social security system would translate into periods of coverage under the Act, and no transnational worker would ever fail to independently qualify for benefits under the Act where she would otherwise require totalization to receive benefits at all.
Plaintiffs' service to Canadian or other foreign employers in Canada was not covered employment. See 42 U.S.C. § 410(a)(A)-(B). The Totalization Agreement does not designate Plaintiffs' foreign service as covered employment or recognize it as equivalent to covered employment. See id. § 410(a)(C). SSA is therefore right to hold that Plaintiffs' CPP/QPP benefits are payments "based in whole or in part upon ... earnings for service which did not constitute 'employment' as defined" in section 210 of the Act. 42 U.S.C. § 415(a)(7)(A).
II. Does the SSA err in holding that Plaintiffs' CPP/QPP benefits are not payments "by a social security system of a foreign country based on an agreement concluded between the United States and such foreign country pursuant to" section 233 of the Act?
The WEP does not apply to "a payment by a social security system of a foreign country based on" a totalization agreement under section 233 of the Act. 42 U.S.C. § 415(a)(7)(A)(II). Plaintiffs' CPP/QPP benefit payments are not within the exclusion, however, because Plaintiffs are eligible to receive them independently, without resort to combination or totalization. They are thus not "based on" the Totalization Agreement. Hawrelak , 667 F. App'x at 163 ; Vanlerberghe , 82 F.Supp.2d at 1214 ; Newton , 874 F.Supp. at 299. Plaintiffs do not argue the contrary. SSA is right to hold that Plaintiffs' CPP/QPP benefits are not payments "by a social security system of a foreign country based on" a totalization agreement. 42 U.S.C. § 415(a)(7)(A)(II)
Conclusion and Order
The WEP applies to Plaintiffs' CPP/QPP benefits. The WEP's exclusions do not. For these reasons:
Plaintiffs' motion for leave to file a surreply, Dkt. 110, is GRANTED.
Plaintiffs' motion for summary judgment, Dkt. 92, is DENIED.
Defendants' motion for summary judgment, Dkt. 94, is GRANTED.
Final judgment will issue by separate document. Fed. R. Civ. P. 58(a).
IT IS SO ORDERED.